**STATE of Tennessee, Appellee,**

v.

**Thomas Daniel Eugene HALE, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Aug. 3, 1992.

Rehearing Denied Sept. 8, 1992.

James T. Bowman, Anthony B. Lee, Johnson City, appellant.

Charles W. Burson, Atty. Gen. & Reporter, and C. Anthony Daughtrey, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

ANDERSON, Justice.

Thomas Daniel Eugene Hale was convicted of first degree murder for the beating death of two-year-old Jay Michael Maupin, in accordance with the 1988 amendment to Tennessee's first-degree murder statute, which eliminated the requirement that the killing be willful, deliberate, malicious, and premeditated if the child was under thir-

teen and the death resulted from child abuse. The sentencing jury found the two statutory aggravating circumstances—that Maupin was under twelve years of age, and that the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind [1]—outweighed the mitigating circumstances. Hale was sentenced to death by electrocution.

We conclude that the provisions of the 1988 amendment to the first-degree murder statute under which Hale was convicted unconstitutionally deprived the defendant of due process in contravention of the law of the land provisions of Article I, § 8 of the Tennessee Constitution [2]. We further hold that the sentence of death imposed in this case is unconstitutionally disproportionate to the crime committed. Consequently, the conviction and sentence in this case are reversed and the charges against Hale based upon Tenn.Code Ann. § 39–2–202(a)(2) (Supp.1988) are dismissed.

Because our decision today is in no way based upon a conclusion that the evidence of Hale's guilt of some degree of homicide was constitutionally insufficient, the State may, however, in its discretion, choose to re-indict Hale for premeditated first-degree murder, for second-degree murder, or for some lesser-included offense.

## FACTUAL BACKGROUND

In the spring of 1988, nineteen-year-old Thomas Hale came to live with Denise Maupin and her two children, Michael and Jordonna, in their Johnson City apartment. Hale was originally distant with young Michael. Eventually, however, Hale and Michael had more interaction with each other. Unfortunately, many instances of such interaction involved the corporal punishment of the child.

Nora Cunningham, a temporary resident at the Maupin apartment, testified at trial that Hale began "whooping" Michael with

1. Tenn.Code Ann. § 39–2–203(i)(1) and (5) (Supp.1988).

2. "No man to be disturbed but by law.—That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or out-

lawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

his open hand if the boy interrupted the defendant. Cunningham further stated that Hale would strike Michael in the face if the boy "might have peed on hisself, or got in the refrigerator, or took a toy outside that he didn't have permission, just any little thing. Or speaking whenever Thomas was talking to someone, or just any small thing that the child did, he got whooped for it." Cunningham also told of one instance in which Michael stated he had to go to the bathroom. Hale lunged toward the child and pushed him in the back, causing Michael to cut his head on the bottom of the stairs. As a result of that cut, Michael was transported to the hospital where he received stitches to close the wound.

Moreover, Cunningham testified she examined Michael on June 6, 1988, and found "enormous bruises" on the boy's back, buttocks, and legs. She also recalled witnessing Hale pushing Michael out of the way and "throw[ing] him across the floor" when Michael tried to intervene while Hale was arguing with Denise Maupin.

Fourteen year-old Bobby Dean Smith testified he stayed in the Maupin apartment for approximately two weeks during the summer of 1988. During that stay, Smith observed Hale slap Michael across the face and put the boy in a corner if the child was unable to state the date or his name, age, and birthday.

Pamela Ruth Stewart, a Maupin neighbor, testified that she saw Hale hit Michael Maupin three times with a belt on one occasion when Michael came out of his bedroom to go to the bathroom. Although the blows were not severe, Michael shook during the whipping. On another occasion, while the Maupins, Hale and Stewart were out shopping, Stewart said she permitted Michael to go to the bathroom, and at that time, noticed three or four small bruises on the boy's stomach "like he had been poked."

At trial, Dwight Berry, a friend of Hale's who lived in the Maupin apartment from November of 1988 until January of 1989, also stated that he had seen the defendant hit Michael Maupin. According to Berry's testimony, Hale had slapped Michael in the face three or four times for not eating. Additionally, Berry once observed Hale "taking Michael and shoving him and Michael hit the floor right next to the wall."

Another friend of Hale's, Tony Banks, as well as Berry, spent the night of January 17, 1989, in the Maupin apartment. Both men left the residence the following morning and returned at approximately 7:00 p.m. on January 18, 1989. Upon their return, Hale informed them that Michael "had urinated on the floor and he used the bathroom in his britches." While Banks and Berry watched television, Hale paced through the apartment and continued to go into and out of Michael's bedroom.

Eventually, Hale took Michael from the child's room and moved him into the bedroom shared by Maupin and Hale. Berry testified that Hale then indicated that Michael had "done it again," at which time Hale returned to the bedroom into which he had taken Michael.

When Maupin returned home from work at approximately 7:40 p.m., Hale summoned her into the bedroom. Less than a minute later, Maupin called Banks to the room. Banks testified he took one look at Michael and immediately directed Berry to call for paramedic assistance. Banks stated that his nurse's training enabled him to recognize that the child's discoloration and droopy eyes were signs of trouble. He also observed blood on Michael's mouth and noted that the boy could speak only in a whisper. Before the arrival of the paramedics, however, both Banks and Berry agreed to the joint request of Maupin and Hale that the authorities be informed that Michael had fallen down the stairs.

Jeffrey Scott Crawford, a paramedic, testified that he responded to a call for assistance at the Maupin apartment. Upon his arrival, he found a two and one-half-year-old child with a rapid but weak pulse rate and numerous bruises on the face, chest, abdomen, thighs, and groin area. Before the child could be transported to the hospital, Michael's weakened condition caused him to have "a large bowel movement of bright red blood." Crawford also noted

that all Michael "could do was whimper and basically guard his belly as if it were what were bothering him the most."

At trial, Dr. William McCormick, a forensic pathologist, testified about the autopsy he performed on Michael Maupin to determine the cause of death. Although Dr. McCormick observed numerous fresh bruises and abrasions on the boy's body, as well as evidence of older bruises, he concluded that such injuries would not have been life-threatening. Dr. McCormick opined, however, that Michael had bled to death from a very deep tear in the liver and a tear in the small bowel mesentery.

According to Dr. McCormick, "[a] fairly large amount of force" would be required to cause the injury to the liver. Such force could be supplied either by a blow from a fist to the abdomen or from a severe squeeze.

Evidence of such force was supplied by a confession given by Hale to law enforcement authorities. According to that statement, Hale struck Michael repeatedly for defecating and urinating in his clothes. The blows were directed to the child's face, stomach, back, and "just about anywhere." Hale admitted that he used excessive force on Michael but that he "just lost [his] cool" as he had in the past on approximately four or five occasions. Moreover, although he claimed that the beating that resulted in Michael's death "was a very bad extreme," Hale admitted that he beat Michael in December of 1988 "to where he would have died or something" had not Maupin stopped him by grabbing his arm.

## STATUTORY UNDERPINNINGS OF HALE'S CONVICTION

Prior to April 25, 1988, Tennessee's first-degree murder statute provided as follows:

> FIRST-DEGREE MURDER.—(a)(1) Every murder perpetrated by means of poison, lying in wait, or by other kind of willful, deliberate, malicious, and premeditated

killing, or committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb, is murder in the first degree.

> (b) A person convicted of murder in the first degree shall be punished by death or by imprisonment for life.

> (c) Murder in the first degree is a Class X felony.

Tenn.Code Ann. § 39–2–202 (1982). On April 25, 1988, the 1988 amendment to Tennessee's first-degree murder statute, known as "The Scotty Trexler Law," went into effect. See 1988 Tenn.Pub.Acts, ch. 802, § 2 [3]. It provided that:

> It shall also be murder in the first degree to kill a child less than thirteen (13) years of age, if the child's death results from one (1) or more incidents of a protracted pattern or multiple incidents of child abuse committed by the defendant against such child, or if such death results from the cumulative effects of such pattern or incidents.

Tenn.Code Ann. § 39–2–202(a)(2) (Supp. 1988).

When the trial judge instructed the Hale jury on the elements of this offense, as set out in the above 1988 amendment, he found that the words "child abuse" were not defined in the statute. He concluded, therefore, that the statute's mention of incidents of "child abuse" referred to the misdemeanor statutory offense of child abuse, which was defined as follows:

> Any person who maliciously, purposely, or knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such manner as to inflict injury or neglects such a child so as to adversely affect its health and welfare is guilty of a misdemeanor and upon conviction may be fined not more than one thousand dollars ($1,000) or imprisoned

**3.** The amendment was passed by the General Assembly late in the session in response to the public outcry after the conviction of Kerry Phillip Bowers for the lesser offense of the second-degree murder of Scotty Trexler, aged 21

months, a widely publicized case involving previous instances of brutality. See State v. Kerry Phillip Bowers, 1989 WL 86576 (Tenn.Crim.App. at Knoxville, August 2, 1989).

for not more than eleven (11) months and twenty-nine (29) days or both. Tenn.Code Ann. § 39–4–401(a) (1982). As Tenn.Code Ann. § 39–2–202(a)(2) (Supp.188) was written at the time, the trial judge had no other alternative.

The dissent argues, however, that the trial judge erred in charging the jury on the definition of *misdemeanor* child abuse. Based upon the need to find the statute constitutional and the legislative history of the child abuse murder statute, the dissent contends that the provisions of Tenn.Code Ann. § 39–2–202(a)(2) (Supp.1988) must be read to refer not to "child abuse," but to "aggravated child abuse."

The dissent correctly recognizes that Tenn.Code Ann. § 39–2–202(a)(2) (Supp. 1988) was enacted in response to the brutal killing of Scotty Trexler. In that case, the abuse suffered by the young victim clearly amounted to "aggravated child abuse." After listening to the legislative debate on the bill to establish the crime of child abuse murder, however, we find it clear and indisputable that the General Assembly intended that *any* death resulting from child abuse, whether that abuse would constitute a felony or a misdemeanor, be punishable by death by electrocution.[4] For example, in the House debates, an amendment was introduced to clarify the language of the bill. The amendment's sponsor argued that juries needed to know the severity of child abuse, and that the Legislature means "the abuse, the torture, the beating, and the ultimate murder of a child should be first-degree murder." In response, a representative who successfully argued for the rejection of the clarifying amendment implored his colleagues:

> I beg of you, those of you who are trying to adopt this amendment, please, for all of us, make sure we do not leave a loophole in some way to allow these people [child abuse murderers] to escape [the electric chair].

Still another representative urged his fellow representatives to pass the bill "to make it easier to get a first-degree murder conviction on that type of crime."

Moreover, the Legislature has since amended the 1988 statute to remove the requirement of child abuse and substituted the broader language of *bodily injury*, which eliminates the requirement of even a misdemeanor offense as a necessary predicate to a finding of first-degree murder.[5]

Furthermore, the term "child abuse," as used in Tenn.Code Ann. § 39–2–202(a)(2) (Supp.1988), cannot legitimately be construed to refer to "aggravated child abuse" as then defined in Tenn.Code Ann. § 39–4–422.[6] The aggravated child abuse felony statute was adopted by the Legislature during its 1984 session. The Legislature is presumed to have knowledge of the state of the law on the subject under consideration at the time it enacts legislation.

---

4. *See* Legislative Journal, 1988 Tenn.Pub.Acts, ch. 802; Senate Debate, April 14, 1988, Senate Bill 2503 (Senate Tape 81); House Debate, April 7, 1988, House Bill 2479 (House Tape 64), 95th General Assembly.

5. We note that Tenn.Code Ann. § 39–2–202(a)(2) (Supp.1988) has been amended by the Legislature so that proof of prior violations of specific criminal statutes is no longer required in this situation. Instead of requiring proof of prior "child abuse," Tenn.Code Ann. § 39–13–202(a)(4) now defines first degree murder, in part, as "[a] killing of a child less than thirteen (13) years of age, if the child's death results from a protracted pattern or multiple incidents of *bodily injury* committed by the defendant against such child...." (Emphasis added).

6. **Aggravated child abuse.**—(a) A person is guilty of the offense of aggravated child abuse when he commits the offense of child abuse as defined in § 39–4–401, and:

(1) The act of abuse results in the serious bodily injury of the child; or

(2) A deadly weapon is used to accomplish the act of abuse.

(b) As used in this section, "serious bodily injury" shall have the same meaning as is set out in § 39–2–101(a)(2). ["Serious bodily injury" means *bodily injury which involves a substantial risk of death, unconsciousness; extreme physical pain; protracted and obvious disfigurement; or protracted loss or impairment of the function of a bodily member or organ.*]

(c) Any person convicted of the offense of aggravated child abuse shall be guilty of a felony and punished by imprisonment for not less than one (1) nor more than five (5) years. Tenn.Code Ann. § 39–4–422(a), (b), and (c) (Supp.1988).

See, e.g., *Equitable Life Assurance Co. of U.S. v. Odle*, 547 S.W.2d 939, 941 (Tenn. 1977). More importantly, criminal statutes must be strictly construed against the state. *State v. Goins*, 705 S.W.2d 648, 657 (Tenn.1986). Furthermore, as recognized in *Key v. State*, 563 S.W.2d 184, 188 (Tenn. 1978), *quoting Richmond v. State*, 171 Tenn. 1, 6, 100 S.W.2d 1, 2 (1937):

> Under the rule of strict construction, such statutes will not be enlarged by implication or intendment beyond the fair meaning of the language used, and will not be held to include other offenses and persons than those which are clearly described and provided for, although the court may think the legislature should have made them more comprehensive.

Accordingly, if the *1988* General Assembly, in enacting the 1988 amendment, intended to incorporate the concept of *aggravated* child abuse into the first-degree murder statute, it surely could have done so. The Legislature, however, deliberately chose to make incidents only of the lesser misdemeanor offense of "child abuse" necessary predicates to a finding of first-degree murder in cases such as this.

As a result, the trial judge based the jury's charge during the guilt phase of this trial on the misdemeanor child abuse statute, and charged the jury, in part, as follows:

> As used in these instructions 'child abuse' occurs when any person maliciously, purposely, or knowingly, other than by accidental means treats a child in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare.

He also instructed the jury that in order to convict Hale of first-degree murder, it must find that the State proved each prior incident of alleged child abuse beyond a reasonable doubt.

**TENNESSEE CONSTITUTION ARTICLE I, § 8 ANALYSIS**

■ Article 1, § 8 of the Tennessee Constitution provides as follows:

> **Declaration of Rights. No man to be disturbed but by law.**—That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

The phrase, "the law of the land," used in this section of our State Constitution, and the phrase, "due process of law," used in the Fifth Amendment and in the first section of the Fourteenth Amendment to the Constitution of the United States, are synonymous phrases meaning one and the same thing. *Dearborne v. State*, 575 S.W.2d 259 (Tenn.1978); *Daugherty v. State*, 216 Tenn. (20 McCanless) 666, 393 S.W.2d 739 (1965), *U.S. cert. denied*, 384 U.S. 435, 86 S.Ct. 1601, 16 L.Ed.2d 671 (1966); *Kittrell v. Kittrell*, 56 Tenn.App. 584, 409 S.W.2d 179 (1966).

As a necessary element of the first-degree murder with which Hale was charged, as defined by the 1988 amendment, the jury was required to conclude that Hale was guilty of prior instances of misdemeanor child abuse that did not cause, in isolation, the death of Michael Maupin. Hale, however, had not been previously *convicted* of any instances of abuse of the victim. In fact, the record in this case does not reveal that the defendant had even been *charged* with a prior incident of abuse of Michael Maupin.[7]

■ In *State v. Bobo*, 727 S.W.2d 945 (Tenn.1987), *U.S. cert. denied* 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987), this Court ruled that the prosecution may not use as an aggravating circumstance in the *sentencing* phase of a capital trial the fact that the defendant has been *charged* with other murders if those charges have not

---

7. During the sentencing phase of the trial in this matter, Hale testified that he had previously been convicted for an assault "of Michael." Indeed, the presentence report included in the record refers to an October 10, 1989, conviction for assault and battery. On cross-examination by the State, however, Hale clarified that the victim of the assault and battery was a Michael *Orton*, not Michael Maupin.

resulted in convictions. The Court conclud-
ed:

> to permit the State to present evidence
> sufficient to convince the jury beyond a
> reasonable doubt that the defendant had
> committed murders, for which he has not
> yet been convicted and before the very
> jury that has just returned a guilty ver-
> dict for first degree murder, violates the
> concept of fundamental fairness embod-
> ied in due process of law, subjecting a
> defendant to what is in effect a trial
> without the panoply of substantive and
> procedural protections afforded by the
> Tennessee Constitution. Such a proce-
> dure would thus be invalid under the law
> of the land provision of this State's Con-
> stitution, Article I, § 8, which 'is synony-
> mous with the "due process" clause of
> the Fifth and Fourteenth Amendments to
> the Constitution of the United States.
> *Daugherty v. State*, 216 Tenn. 666, 393
> S.W.2d 739 (1965).' *Dearborne v. State*,
> 575 S.W.2d 259, 262 (Tenn.1978). *See
> also Frazier v. State*, 480 S.W.2d 551,
> 552 (Tenn.Cr.App.), *cert. denied* (Tenn.
> 1972).

*State v. Bobo*, 727 S.W.2d at 952. Further-
more, the Court stated that admission of
such evidence violates a defendant's right
to a trial before an impartial jury and a
defendant's right to have charges institut-
ed by means of a presentment or indict-
ment. *Id., citing State v. Davis*, 637
S.W.2d 471, 472 (Tenn.Crim.App.1982);
*Spurgeon v. Worley*, 169 Tenn. (5 Beeler)
697, 703, 90 S.W.2d 948, 950 (1936); Tenn.
Const. Art. I, §§ 9 and 14.

If such evidence is inadmissible during
the sentencing phase of trial to establish
aggravating circumstances, we have no
hesitation in concluding that it should also
be inadmissible in the guilt phase to estab-
lish an element of the offense. The 1988
amendment clearly requires the prosecu-
tion to establish prior instances of misde-
meanor child abuse to prove the elements
of first-degree murder. We now hold that
such a requirement is fundamentally unfair
and thus contravenes the "law of the land"
provision of Article I, § 8 of the Tennessee
Constitution.

■ The statute under consideration in
this case allows the jury deciding the de-
fendant's guilt or innocence of first degree
murder also to decide the defendant's guilt
or innocence of prior uncharged misde-
meanors. In such a scenario, the fact-
finder, in an already highly emotional set-
ting, is aware that the defendant on trial
has been charged with actions precipitating
the death of a helpless child. Tenn.Code
Ann. § 39–2–202(a)(2) (Supp.1988) then ex-
pects that same fact-finder to render an
impartial decision on whether or not the
same defendant committed similar acts at
some time in the past. Given the fact-
finder's knowledge of later, tragic events,
we do not believe that such an inquiry by a
jury can be accompanied by sufficient safe-
guards to ensure that a finding of guilt of
prior allegations of abuse is not tainted by
the fact of a child's death. Tenn.Code Ann.
§ 39–2–202(a)(2) (Supp.1988) thus permits,
as we held in *Bobo*, infringement of the
right to an impartial jury and the right to
be charged pursuant to an indictment or
presentment. Accordingly, such a proce-
dure violates "the concept of fundamental
fairness embodied in due process of law"
and violates the law of the land provisions
of Article I, § 8 of the Tennessee Constitu-
tion.

The dissent contends that other statutes,
particularly the felony murder statute,
Tenn.Code Ann. § 39–13–202(a)(2) (1991),
and the former involuntary manslaughter
statute, Tenn.Code Ann. § 39–2–221 (1982),
also allowed the jury determining a defen-
dant's guilt or innocence to consider and
declare that defendant's guilt of *another*
crime. In both such instances, however,
the additional crime must be committed
simultaneously with the murder or man-
slaughter. In that sense, the prior crimes
are inextricably tied to the killings as ele-
ments of the offenses of felony murder and
involuntary manslaughter.

Here, however, the prior crimes may be
distant in time and unrelated to the murder
on trial in all aspects other than the identi-
ty of the victim and the defendant. The
situation presented by application of the
provisions of Tenn.Code Ann. § 39–2–

202(a)(2) (Supp.1988) is, therefore, qualitatively and logically unrelated to the statutes cited by the dissent.

The defendant may also be seriously disadvantaged by not receiving sufficient notice of those instances of prior alleged abuse upon which the prosecution seeks to rely. Furthermore, those instances of prior alleged abuse may be so removed temporally from the offense on trial that an effective defense cannot be prepared and defense witnesses cannot be procured. These types of potential problems in prosecutions under Tenn.Code Ann. § 39–2–202(a)(2) (Supp.1988) emphasize the soundness of the *Bobo* decision and the need for its application in the guilt or innocence stage, as well as the sentencing stage of a trial.

■ For the reasons discussed to this point in this opinion, we conclude that Hale's conviction for first-degree murder, based upon prior incidents of child abuse of Michael Maupin, must be reversed and the charges dismissed. Our decision today is, however, in no way based upon a conclusion that the evidence of Hale's guilt of some degree of homicide was constitutionally insufficient. The State may, therefore, in its discretion, choose to re-indict Hale for premeditated first-degree murder, for second-degree murder, or for some lesser-included offense.

## SENTENCING AND PROPORTIONALITY ANALYSIS

We also believe that, regardless of the unconstitutionality of Tenn.Code Ann. § 39–2–202(a)(2) (Supp.1988), the sentence of death imposed upon Hale in this case must be reversed because such a punishment is disproportionate to the crime on which the jury was charged.

Tenn.Code Ann. § 39–13–206(c)(1)(D) (1991), provides that this Court *shall* determine whether "[t]he sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant." In prior cases, the Tennessee Supreme Court has upheld death penalties as proportionate punishments in cases involving pre-

meditated murder, *see, e.g., State v. McCormick*, 778 S.W.2d 48 (Tenn.1989), *U.S. cert. denied* 494 U.S. 1039, 110 S.Ct. 1503, 108 L.Ed.2d 638 (1990), and in cases involving murder committed during the perpetration of a *felony, see, e.g., State v. Goad*, 707 S.W.2d 846 (Tenn.1986). Under Tennessee's post–1977 death penalty statutes, however, we have never approved the imposition of a sentence of death for a "murder" committed during the perpetration of a misdemeanor.

■ In fact, a death resulting from the commission of a misdemeanor is generally not even considered murder. In Tennessee, prior to the legislative adoption of the 1988 amendment to Tenn.Code Ann. § 39–2–202 that created the capital crime of child abuse murder, any violation of a statute resulting in death generally constituted involuntary manslaughter "if the violation of the statute [was] the proximate cause of death." *Brown v. State*, 201 Tenn. (5 McCanless) 50, 53, 296 S.W.2d 848, 849 (1956); Tenn.Code Ann. § 39–2–221 (now Tenn.Code Ann. § 39–13–212, proscribing criminally negligent homicide); 41 C.J.S. *Homicide*, § 309 (1991).

■ Of course, "[t]he power to define what shall constitute a criminal offense is committed to the discretion of the legislature, subject to constitutional limitation and safeguards...." *Hall v. State*, 151 Tenn. (24 Thompson) 416, 418, 270 S.W. 84, 85 (1925). However, "a capital sentencing scheme must ... provide a 'meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not.'" *Godfrey v. Georgia*, 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980) (citations omitted); *State v. Barber*, 753 S.W.2d 659, 667 (Tenn.1988), *U.S. cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 236 (1988). The provisions of the 1988 amendment to the first-degree murder statute, Tenn.Code Ann. § 39–2–202(a)(2) (Supp.1988), do not provide such a "meaningful basis." In fact, that statute would allow a jury to consider imposing the death penalty upon an individual who, in the pro-

cess of administering corporal punishment, inadvertently causes the death of the child by an intentional, inappropriate, but not especially violent, blow to the child's body ten years after similarly striking the child.

In this case, the jury determined that Hale's inexcusable and reprehensible treatment of Michael Maupin resulted in the child's tragic death. Under Tennessee's child abuse murder statute, however, the jury was not required to find that the killing was premeditated, deliberated, intended, or even that the circumstances surrounding the homicide manifested an extreme indifference to the value of human life. In effect, therefore, Hale became subject to execution solely on the basis of the commission of a misdemeanor that, regrettably, resulted in the death of another. Because other killings resulting from the commissions of misdemeanors are classified only as manslaughter, death eligibility under the provisions of Tenn.Code Ann. § 39–2–202(a)(2) (Supp.1988) is constitutionally disproportionate punishment violative of Article I, § 16 of the Tennessee Constitution.[8]

## SUMMARY

For the reasons set forth in this opinion, we hold that Hale's conviction under the provisions of Tenn.Code Ann. § 39–2–202(a)(2) (Supp.1988) lacked the fundamental fairness demanded by the law of the land provisions of Article I, § 8 of the Tennessee Constitution. Moreover, pursuant to the provisions of Article I, § 16 of the Tennessee Constitution, the sentence of death imposed upon Hale for that conviction is unconstitutionally disproportionate to the crime involved. The first degree murder conviction and the resulting sentence of death are, therefore, reversed and the indictment in this case is dismissed

without prejudice to the State to re-indict Hale as noted in this opinion.

Costs of this appeal are taxed to the State.

REID, C.J., and DAUGHTREY, J., concur.

DROWOTA and O'BRIEN, JJ., dissent.

DROWOTA, Justice, dissenting.

Although I concur in the majority's decision that this case must be reversed because of improper jury instructions, I dissent from its holding that T.C.A. § 39–2–202(a)(2) (Supp.1988) violates Article I, § 8, of the Tennessee Constitution. Furthermore, because I would construe the term "child abuse" used in the statute as referring only to aggravated child abuse, I also disagree with the majority's holding that a sentence of death for violation of § 39–2–202(a)(2) is constitutionally disproportionate punishment under Article I, § 16, of our state constitution.

The majority holds that T.C.A. 39–2–202(a)(2) violates the due process guarantee of Article I, § 8, because it requires the jury "to declare a defendant guilty of prior crimes for which the defendant was never charged or tried and, moreover to sentence that defendant to death based upon those 'convictions.'" The statute does no such thing. It requires as an element of the offense the defendant's commission of a protracted pattern or multiple incidents of child abuse against the victim. A similar element, the defendant's commission of another offense, is found in the crimes of felony murder and involuntary manslaughter under the criminal code prior to November 1989. *See* T.C.A. § 39–13–202(a)(2) (1991); § 39–2–221 (1982). No one would argue that the statutes establishing these two offenses violate due process for the reason asserted by the majority. As in the

8. Article I, § 16 of the Tennessee Constitution provides:

**Restrictions on bail, fines and punishment.**—That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

We note without further comment that the present first-degree murder statute, Tenn.Code

Ann. § 39–13–202(a)(4) (1991), not only would allow imposition of the death penalty for a killing resulting from commission of a misdemeanor, as in this case, but also for a death resulting from *accidental* infliction of "bodily injury," defined to include, *inter alia*, cuts, scrapes, and bruises, upon the child victim.

case of felony murder or involuntary manslaughter, all that the due process provision of the Tennessee Constitution requires is that the State prove the offense that is an element of the homicide beyond a reasonable doubt in order to convict the defendant of the crime. *See State v. McLerran*, 604 S.W.2d 841, 845 (Tenn.1980).

One problem with the majority's holding is that it would limit convictions under the statute to those persons who have previously been convicted of abusing the victim. Obviously, such cases would be rare, and the legislature's action in passing the statute would be almost meaningless. One other interpretation of the majority's opinion is that the State (1) must charge a defendant whom it wished to prosecute under T.C.A. § 39–2–202(a)(2) with those acts of child abuse upon which it intended to rely in proving the homicide and (2) must convict the defendant of those offenses either prior to or as a part of the homicide prosecution before due process will be satisfied under our state constitution. This ritualistic procedure contributes nothing to the protection of a defendant's rights to due process under Article I, § 8, that is not already afforded by requiring the State to prove the incidents of child abuse beyond a reasonable doubt at the homicide trial.[1]

*State v. Bobo*, 727 S.W.2d 945 (Tenn. 1987), cited by the majority as authority for its holding, can be distinguished from this case. *Bobo* involved the construction of T.C.A. § 39–2–203(i)(12) [now § 39–13–204(i)(12)], which provides *as an aggravating circumstance in capital sentencing* the defendant's commission of "mass murder," defined by the statute as "the murder of three or more persons within the state of Tennessee within a period of forty-eight (48) months, ... perpetrated in a similar fashion in a common scheme or plan." This Court's conclusion that circumstance (i)(12) required prior convictions of murder was made in the unique context of a capital sentencing proceeding, at which both the state and federal constitutions require heightened due process and increased reliability. *See State v. Hines*, 758 S.W.2d 515, 523–524 (Tenn.1988); *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). If construed to have allowed the jury to consider *previously unproven, unrelated* and *separate* charges of murder as an aggravating circumstance directly weighed in its sentencing determination, T.C.A. § 39–2–203(i)(12) would have violated the principles of reliability required *in capital sentencing*. In the present case, the jury is not sentencing the defendant to death based upon proof of unrelated and separate offenses never established without the panoply of protections afforded by trial. The defendant has been afforded these protections at the guilt hearing, at which the acts of abuse are relevant as elements of the offense.

Furthermore, I cannot agree with the majority's conclusion that the term "child abuse" used in § 39–2–202(a)(2) "cannot legitimately be construed to refer to 'aggravated child abuse' as then defined in T.C.A. § 39–4–422 [Supp.1988]." Review of the legislative history of the statute[2] shows

---

**1.** The greatest potential for due process violation in a prosecution under the statute lies in the fact that, unlike the other crimes which are elements of felony murder and involuntary manslaughter, many of the acts of child abuse necessary to establish the offense in § 39–2–202(a)(2) will usually have occurred at a time other than that of the killing. A broad range of conduct extending over an indefinite period of time is thus relevant at trial. A defendant may be seriously disadvantaged in defending himself against proof of this conduct without some notice of the nature of the evidence the State intends to offer in carrying its burden of proving a protracted pattern or multiple incidents of child abuse. *Cf. Application of Boyd*, 189 F.Supp. 113, 117–118 (M.D.Tenn.1959), *aff'd*, 281 F.2d 195 (6th Cir.1960) (finding Tennessee's 1939 Habitual Criminal Act violated federal due process clause because a defendant prosecuted under it did not receive notice of prior offenses to be used against him sufficient to enable him to prepare and present a defense to the charges against him). The defendant has not asserted that this aspect of § 39–2–202(a)(2) hampered his defense in the present case.

**2.** *See* Legislative Journal, 1988 Tenn.Pub.Acts, Ch. 802; Senate Debate, April 14, 1988, Senate Bill 2503 (Senate Tape 81); House Debate, April

that the offense in § 39–2–202(a)(2) was consistently equated with *felony* murder by the General Assembly. It is also clear that the statute was enacted specifically in response to the murder of twenty-one-month-old Scotty Trexler. The pattern of abuse inflicted upon Trexler was not misdemeanor child abuse. It involved the intentional infliction of serious and extensive burns, dislocation of the hip joints, and trauma to the head. *See State v. Kerry Phillip Bowers*, 1989 WL 86576 (Tenn. Crim.App., Knoxville; August 2, 1989). It is also evident from the legislation's history that the General Assembly considered the statute a codification of this Court's decision in *State v. LaChance*, 524 S.W.2d 933 (Tenn.1975). The persistent pattern of abuse inflicted upon the young victim in that case—long and brutal beatings inflicted with belts, boards, boots and fists—was likewise what would later be condemned as the felony of aggravated child abuse under T.C.A. § 39–4–422.

Construing the statute to require aggravated child abuse is not only in complete accord with the intent of the General Assembly but also follows established principles of statutory construction. It is a recognized rule that, where one construction will render a statute void as unconstitutional and another will render it constitutionally valid, the courts will adopt the latter interpretation even though the former construction may initially seem more natural. *State v. Bobo*, 727 S.W.2d at 955. In the present case, I might agree with the majority that, if § 39–2–202(a)(2) allowed imposition of a sentence of death for killings committed during the perpetration of a misdemeanor, there could be serious proportionality problems under Article I, § 16, of the Tennessee Constitution. However, interpreting the statute as referring to aggravated child abuse avoids any such constitutional defect. Once the defendant's culpability is that required for the commission of a felony involving the deliberate or

reckless use of lethal, or potentially lethal, violence, problems with general proportionality under Article I, § 16, no longer exist. *Cf. State v. Smith*, 695 S.W.2d 954, 960 (Tenn.1985); *State v. Simon*, 635 S.W.2d 498, 502 (Tenn.1982).[3]

For these reasons, I dissent from the majority's opinion in this case. I would hold that T.C.A. § 39–2–202(a)(2) (Supp. 1988) does not violate Article I, § 8, of the Tennessee Constitution. I would also conclude that the term "child abuse" used in the statute encompasses only the offense of aggravated child abuse as defined in T.C.A. § 39–4–422 (Supp.1988) and that imposition of the death penalty for violation of § 39–2–202(a)(2) (Supp.1988) does not, therefore, violate the cruel and unusual punishments provision of Article I, § 16, of the Tennessee Constitution. Because, however, I would find that the trial court erred in instructing the jury on misdemeanor child abuse rather than the felony of aggravated child abuse, I concur in the majority's holding that this case must be reversed, but I would remand for a new trial rather than dismiss the charges against the defendant.

I am authorized to state that Justice O'BRIEN concurs in this dissenting opinion.

---

7, 1988, House Bill 2479 (House Tape 64), 95th General Assembly.

**3.** This does not, however, preclude a finding of case specific disproportionality based upon the circumstances of each murder and the character of each defendant. *See State v. Pritchett*, 621 S.W.2d 127, 140 (Tenn.1981).