**IN THE COURT OF APPEALS OF TENNESSEE**
**AT NASHVILLE**

FILED

March 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

IN RE ESTATE OF JANET GAIL          )
LEVINE MARCH, Absentee,             )
                                    )
Jeffrey Mobley, in his capacity as  )
Conservator and Receiver for        )
Janet Gail Levine March,            )
                                    )      Appeal No.
                                    )      01-A-01-9708-PB-00437
        Plaintiff/Appellee,         )
                                    )      Davidson Probate
VS.                                 )      No. 96P-1702
                                    )
LAWRENCE E. LEVINE,                 )
CAROLYN R. LEVINE, for themselves   )
and in their capacity as next friends of )
their daughter Janet Gail Levine March, )
Absentee, and their grandchildren,  )
Samson Leo March and Tzipora        )
Josette March (Children of Absentee), )
                                    )
        Defendants/Appellants,      )


APPEALED FROM THE PROBATE COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE FRANK C. CLEMENT, JUDGE


MARK H. LEVINE
350 South Grand Avenue, Ste. 3600
Los Angeles, CA 90071-3442

JON E. JONES
345 S. Jefferson Avenue, 4th Floor
Cookeville, TN 38503-0699
        Attorneys for Appellant

JOEL M. LEEMAN
3rd Floor, 230 Fourth Avenue North
Nashville, TN 37219-8888
        Attorney for Appellee


REVERSED AND REMANDED


                          BEN H. CANTRELL,
                          PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
TODD, J.

# O P I N I O N

This case involves the assets of an absentee's estate under Tenn. Code Ann. § 30-3-201, et seq. After appointing a conservator for the estate, the Probate Court of Davidson County approved the sale of the absentee's major asset, and the distribution of part of the proceeds to the absentee's husband, who is a suspect in her disappearance. The absentee's parents, appearing on their own behalf and as next friend of the absentee, attack the lower court's order on both procedural and substantive grounds. The conservator and the absentee's husband challenge the parents standing to appeal the lower court's order. We find that the appellants had standing to object to the settlement and that the distribution to the husband is not justified by the proof. Accordingly, we reverse the lower court's order and remand the cause for further proceedings.

## I.

Janet Gail Levine March disappeared on August 15, 1996, leaving behind a husband and two minor children. The husband, a Nashville lawyer, soon became the subject of an intense investigation into his wife's disappearance. Although a body has not been found, the investigation continues, and Mr. March continues to invoke the Fifth Amendment when questioned about his knowledge of his wife's whereabouts.

In addition to small checking and savings accounts and other small assets, Ms. March owned two primary assets in her sole name: an upscale home on Blackberry Road in Nashville and a 1996 Volvo. She also owned a 1990 Jeep in joint ownership with her husband.

Ms. March's parents, Lawrence and Carolyn Levine, had financed the construction of the home on Blackberry Road through gifts and a low-interest loan. At the time of Ms. March's disappearance, the Levines held a note, signed by both Mr.

- 2 -

and Ms. March secured by a deed of trust on the house.  Mr. March also signed the deed of trust.

On October 30, 1996, Mr. March filed a petition in the Probate Court of Davidson County seeking a summary transfer of the checking and savings accounts to him.[1]  Although Tenn. Code Ann. § 30-3-203 authorized the court to make the transfer without notice or a hearing (because the two accounts contained less than $5,000), the court set a hearing and notified Ms. March's next of kin.

On the date of the hearing, Mr. and Ms. Levine filed an intervening petition as parents and next friends of Janet March, and as grandparents of the two children.  They opposed the transfer of any property to Mr. March.[2]  On the same date, Mr. March amended his petition asking to be appointed a receiver for all of Ms. March's property.  After the hearing, the court noted the hostility between the parties and appointed an independent conservator pursuant to Chapter 3, Title 30 of the Tennessee Code.  The order gave the conservator power over all of Ms. March's assets, including her real estate.

By this time, Mr. March had relocated to Chicago with the children.  The house on Blackberry Road was empty; the utilities had been turned off; the real estate taxes were in arrears, and the mortgage was in default.  Mr. and Ms. Levine started foreclosure proceedings, but the conservator secured an injunction preventing the sale until February 28, 1997.  Although Mr. March had previously non-suited his claims in order to avoid discovery, he reasserted an interest in all of Ms. March's property in January of 1997.

---

[1]The petition also sought a transfer to Mr. March of the custodial rights to two accounts held by Ms. March for her children under the Tennessee Uniform Transfers to Minors Act.

[2]Their opposition was based, in part, on Tenn. Code Ann. § 31-1-106, which prevents any person from taking the property of a decedent, "by will, deed or otherwise," when such person has killed the decedent (unless the killing was accidental or in self-defense).

The conservator sought to be appointed receiver for Ms. March's property and asked for further instructions from the court. The motion to be appointed receiver was unopposed, so the court granted the motion on February 4, 1997. In the same order, the court ordered the conservator/receiver to list the house for sale.

On February 27, 1997 the conservator petitioned the court to approve a contract of sale for the house. The court set a hearing on the motion for March 19, 1997. In a flurry of activity, beginning on March 6, 1997, Mr. March recorded a lien lis pendens asserting a marital interest in the house on Blackberry Road, recorded four deeds of trust on the property securing members of his family (with himself as grantor), and sued the conservator and the trustee in the Levines' deed of trust for damages.

After the hearing on March 19, the court struck the encumbrances filed by Mr. March, approved the sale of the property, and ordered that all lien claims be transferred to the proceeds of the sale. Mr. March filed a notice of appeal from the "final" judgment entered on April 1. The Levines, with the court's approval, renewed their efforts to depose Mr. March. The deposition was scheduled for May 21, 1997.

The conservator and Mr. March began negotiating a settlement. On May 20, they notified the Levines that they had reached an agreement and would present it to the court for approval the next day. The agreement provided that Mr. March would receive the Volvo and the Jeep and a $60,000 cash payment from the proceeds of the sale. In return Mr. March promised to dismiss his appeal and relinquish all claims he had to the proceeds of the sale of the house. In addition Mr. March agreed to waive any claim for homestead and a year's support, and he agreed that in the event he became entitled to any portion of Ms. March's estate, as an elective share or as a division of marital property in a divorce, the amount due him would be reduced by $73,250.00 (the sum of the $60,000 in cash and one-half of the value of the Volvo and Jeep.)

At the hearing on May 21, the Levines vigorously protested the approval of the settlement and asked for a continuance in order to discover the basis for any claims Mr. March had against the house.[3]  They pointed out that there was no evidence before the court that would substantiate such a claim, and that the conservator had adamantly denied Mr. March had any colorable claims, until the settlement talk started.  Without hearing any proof, the court approved the settlement.

## II.  Standing

The probate court held that Mr. and Ms. Levine's interest in the proceeding was confined to the amount of their claim under the deed of trust; and that they did not have standing to object to the settlement between the conservator and Mr. March.  The conservator continues to press that argument on appeal.

We disagree.  The Levines joined this fight as the next friend of their daughter.  It is not clear from their intervening petition whether they stood as next friend to the children or simply as their grandparents, but it is clear that they asserted defenses to Mr. March's claim of an interest in Ms. March's estate.  Specifically, they raised as a defense the provision in Tenn. Code Ann. § 31-1-106 that prohibits a person who kills another from inheriting the deceased's property or taking such property "by will, deed, or otherwise."

A "next friend" is, in a sense, a volunteer who asserts a claim on behalf of a person under a legal disability. *See Williams v. Gaither*, 139 Tenn. 587, 202 S.W. 917, 918 (1918).  A next friend is someone who is capable of protecting the interests of the person under the legal disability, who will be liable for the costs, and against whom the court can make and enforce its orders.  *See Raskin v. Warner*, 70 Tenn. 302, 304-05 (1879).  While a next friend is not a party to the action, *see Queen v. Jolley*, 219 Tenn. 427, 431, 410 S.W.2d 416, 418 (1966), the role a next friend plays

---

[3]In fact, the Levines had only begun the deposition of Mr. March that morning, and he had refused to answer any questions about the basis for his claims.

resembles that of a guardian.  *See Williams v. Gaither*, 139 Tenn. at 589, 202 S.W. at 918; *Cummings v. Patterson*, 54 Tenn. App. 75, 94, 388 S.W.2d 157, 166 (1964).

A next friend may be replaced if the court appoints a personal representative for the person under disability.  The general rule is that a duly appointed representative becomes the successor to the next friend with regard to any claim the next friend has asserted on behalf of a person under a legal disability.  *See Williams v. Gaither*, 139 Tenn. at 590, 202 S.W. at 918 (Tenn. 1918).  This transfer of power includes the power to control the claim.  *Id.*

But the transfer is not automatic.  In *Williams v. Gaither* a husband had been injured in an accident, and the injuries he sustained rendered him mentally incompetent.  His wife, as next friend, sued the defendant on her husband's behalf. The husband's mother was later appointed guardian of the injured man and she sued the defendant in a separate action for the same injuries.  The guardian then filed a petition in the cause brought by the next friend asking that the action be dismissed at the cost of the next friend.  The court analyzed the problem in this way:

> The first suit having been properly brought, what right had the guardian by motion or petition therein to have it dismissed?  If, and so long as, the guardian proceeds on the basis of the first suit being wrongfully brought or prosecuted by the next friend, she is to be deemed to be a stranger to that action, and as such she could not successfully so move to dismiss it. (Citation omitted).

> The true conception seems to us to be that the regularly appointed guardian became the successor of the next friend in respect of the right to control the suit.  Upon the due appointment of the guardian, the power to control the *non compos* and his affairs, including the suit, devolved upon her.  The power formerly exercisable by the next friend was superseded by that belonging to the regularly appointed guardian.  The greater power overlapped and, so to speak, absorbed the lesser at the guardian's election.  It is not to be tolerated that property rights of a *non compos mentis* should be controlled by a next friend after the appointment of a regular guardian, against the will of the latter. Neither is it to be recognized that the guardian may at will thus set at naught what the next friend has precedently done, under the law's sanction, in bringing suit. If she wishes, as a part of her

right of control, to dismiss such suit, she must do so by asserting her right of succession to the next friend. The proper course, therefore, was for the guardian to move to be substituted as plaintiff in the first suit; then, if she desired for any reason, she might have dismissed that suit and brought another, or assumed continued control of that action. But she would in either event do so by adopting the action, and taking the reins from the hands of the next friend, and not as one claiming as an antagonist, or rival plaintiff.

139 Tenn. at 590-91.

In *Hunt v. Hunt*, 412 S.W.2d 7 (Tenn. App. 1965), the husband, already under a guardian, brought suit by next friend to have his marriage annulled. The trial court held that the next friend had no standing to bring suit where a guardian had already been appointed for the person under disability. This court reversed the lower court because the regular guardian had refused to take a stand either for or against the claim.

The Rules of Civil Procedure seem to have adopted the view that some claims may be asserted by next friend even where a personal representative has been appointed. Rule 17.03 of the Tennessee Rules of Civil Procedure provides:

Whenever an infant or incompetent person has a representative, such as a general guardian, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative, or if justice requires, he or she may sue by next friend. (Emphasis added.)

While we do not find any Tennessee cases on point, the weight of authority interpreting Rule 17(c), Fed. R. Civ. Proc. (almost identical to Tenn. R. Civ. Proc. 17.03) is in favor of allowing suit by next friend in certain circumstances. In 3A J. Moore & J. Lucas, *Moore's Federal Practice and Procedure*, § 17.26 (2d. ed. 1985), the authors state:

Under the second sentence of subdivision (c) an infant or incompetent person who does not have a duly appointed representative, may sue by his next friend or by a guardian *ad litem*. Even though the infant or incompetent has a general representative, if the representative is unable or refuses to act or his interests conflict with the person

represented, the infant or incompetent may sue in federal court by his next friend or by a guardian *ad litem*. Courts have always had the power to appoint special representatives under such circumstances, and this power should be considered retained by the federal court in Rule 17(c). The fact that the first sentence is permissive is an implicit recognition of that power; and, in any event, a guardian *ad litem* probably can be appointed in such cases under the third sentence of subdivision (c).

State courts have taken the same view when a personal representative has a conflict of interest or "for other cause." *See In Re Becan*, 26 A.D.2d 44, 270 N.Y.S.2d 923 (App. Div. 1966). We note that our rule allows suit by next friend when the incompetent person does not have a personal representative or "if justice requires." The fact that the rule is in the alternative suggests that a next friend may assert the interests of an absentee even though a personal representative has been appointed.

Where the Levines originally opposed Mr. March's claims as next friends of the absentee, the appointment of a conservator did not automatically terminate their standing to oppose the conservator/March settlement. In fact, their status as next friend of the absentee has not been challenged in this record. Therefore, they had standing to oppose the settlement.

### III. The Settlement Approval

### a. Due Process

Since we have found that Mr. and Ms. Levine had standing to object to the settlement, we believe the emergency hearing on May 21, 1997 deprived them of a meaningful opportunity to object to the terms of the settlement. They were in fact, in the middle of a deposition with Mr. March, seeking to discover the basis for any claim he had against his wife's property. So far as this record shows, he never answered any of the questions.

- 8 -

Article I § 8 of our Constitution prohibits the taking of property except by the "law of the land." This phrase is synonymous with "due process of law" used in the Fifth and Fourteenth Amendments of the United States Constitution. *State v. Hale*, 840 S.W.2d 307 (Tenn. 1992). A fundamental requirement of due process is notice and an opportunity to be heard, *Phillips v. State Bd. of Regents*, 863 S.W.2d 45 (Tenn. 1993), or, as our Supreme Court said in *State ex rel. Anglin v. Mitchell,* 596 S.W.2d 779 at 786 (Tenn. 1980), "the right to a fair trial in a fair tribunal." The purpose of notice under the due process clause is to apprise a party of, and permit adequate preparation for, an impending hearing. *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1 (1978).

The hearing conducted on May 21, 1997 failed to satisfy the requirements of due process. The Levines did not have an adequate opportunity to rebut Mr. March's claims.

### b. A Failure of Proof

The settlement of a claim by or against an infant or incompetent person must be based on proof showing that the settlement is in the minor or incompetent person's best interests. *Thomas v. R. W. Harmon, Inc.*, 760 S.W.2d 212 (Tenn. App. 1988). In *Thomas v. Harmon* the court set aside a settlement of a minor's personal injury claim where the only proof offered was proof that the child's parents wished to enter into the settlement. The court said, "The minor's rights were impaired by a purported hearing, when in fact there was no evidence introduced upon which a court could base an opinion requiring consideration of the best interests of the minor." 760 S.W.2d at 217.

It is fair to point out that the court in *Thomas v. Harmon* did not appoint a guardian ad litem to protect the minor's interests, while the court here appointed a conservator for the absentee's estate. But it seems to us that the situation is exactly the same regardless of who purports to represent the person under disability. In

*Thomas* it was the parents; here it was the conservator, but the problem of proof (or lack thereof) is the same. There is nothing in the record on which the court could base a determination that it was in the best interests of the absentee to pay a minimum of $73,000 from her estate to settle what appears to be doubtful claims.

It is not clear from this record what claims Mr. March might have against the absentee estate. He asserts an interest in the equity in the house, and the settlement provides that he would credit the amount he received to any claim he might have in a subsequent divorce. But the facts simply do not show that he would receive a substantial portion of the equity in the house as a part of a divorce proceeding. While the equity in the house would be marital property, we cannot speculate on how it would be divided in light of the other marital assets he received in the settlement and the lack of proof of the contributions he made to the acquisition and construction of the house.

At the hearing the conservator also expressed a fear that, absent the settlement, the litigation expenses would continue to escalate as Mr. March pursued an appeal of the March 19 order and tried to hold up the sale of the house.

We have no doubt that Mr. March has the ability to make trouble for the estate, but we do not think he could have held up the sale. In its March 19 order, the court had already ordered that the house be sold and that Mr. March's claims and those of his relatives be transferred to the proceeds of the sale. The appeal of that order could not be made instantaneously, because it was not a final order under Rule 3(a), Tenn. R. App. Proc., and we think the probate court had the power to deal with any frivolous claims or obstructionist tactics that threatened to deplete the absentee's estate. In short, the courts should not be held hostage by in terrorem tactics of one of the litigants.

**IV.**

Although not raised by the parties, there are two additional matters that we feel compelled to address.

### a. The Levines' Conflict of Interest

We think the Levines have a potential conflict of interest as next friends of the absentee. They are actually creditors of the estate by virtue of the mortgage they held on the Blackberry Road property. They had started foreclosure proceedings before the conservator obtained a preliminary injunction in January of 1997. While we are satisfied to recognize that they have standing and that they were acting in a good faith attempt to protect their absent daughter's estate, they should not wear two hats in this litigation.

Our jurisdiction is appellate only. Tenn. Code Ann. § 16-4-108. Since the issue was not raised in the court below we cannot address it here, and with the sale of the house now presumably complete we do not know if a conflict still exists. We merely point out the potential conflict for consideration in subsequent proceedings.

### b. The Children's Rights

The absentee's children obviously have rights that deserve specific protection. Their rights conflict with their father's rights, and we have noted the conflict between their grandparents and their mother's estate. That leaves the conservator as the only party in this litigation without an obvious conflict.

We do not wish to increase the expenses involved in settling this estate. But if the probate court determines that the conservator cannot adequately represent the children's interests, the appointment of a guardian ad litem would be appropriate.

The judgment approving the conservator's settlement with Mr. March is reversed and the cause is remanded to the Probate Court of Davidson County for

further proceedings in conformity with this opinion. Tax the costs on appeal to Mr. March.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
HENRY F. TODD, JUDGE