# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 4, 2010

## STATE OF TENNESSEE v. PIERRE JACKSON

**Appeal from the Criminal Court for Shelby County**
**Nos. 01-12069, 01-012070, 01-012071      John P. Colton, Jr., Judge**

**No. W2009-01680-CCA-R3-CD  - Filed May 19, 2010**

The defendant, Pierre Jackson, was convicted by a Shelby County jury of two counts of aggravated vehicular homicide, two counts of leaving the scene of an accident, and one count of driving on a revoked license, third offense, and was sentenced by the trial court to an effective sentence of fifty-two years, five months, and twenty-nine days. State v. Pierre Jackson, No. W2006-02127-CCA-R3-CD, 2008 WL 2053652, at *1 (Tenn. Crim. App. May 12, 2008), perm. to appeal denied (Tenn. Dec. 8, 2008). In the first direct appeal, this court affirmed his convictions and the trial court's order of consecutive sentencing, but remanded for resentencing of the aggravated vehicular homicide convictions because the trial court erroneously applied an enhancement factor that was not found by the jury. Id. Upon resentencing, the trial court imposed the same sentence. The defendant now appeals, arguing that his sentence is "neither fair nor consistent" with those received by other defendants with similar records and equal moral culpability whose drunk driving by chance does not result in anyone's death. Following our review, we affirm the sentences imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and D. KELLY THOMAS, JR., JJ., joined.

Robert Brooks, Memphis, Tennessee, for the appellant, Pierre Jackson.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This case arises out of an automobile accident in which the intoxicated defendant struck and killed a couple on a motorcycle and then fled the scene. Our first direct appeal opinion contains the following summary of the facts presented at trial:

At trial, Carolyn Young testified that she was driving behind a motorcycle on Summer Avenue in Memphis on the night of July 25, 2001. As she entered the junction of Summer Avenue and Interstate 240, she glanced over and noticed that the two motorcycle riders were lying on the road. She did not see a collision but saw a very dark vehicle cross in front of her and approach the on-ramp to the interstate. She never saw the driver of the vehicle.

Christopher Colyer was traveling westbound on Summer Avenue when he came upon a traffic accident at the Interstate 240 junction. He did not witness the accident but, after stopping his vehicle and going over to the motorcycle, saw a man lying on top of the motorcycle and a woman lying on top of the man. Bystanders told him that a van had stopped on the entrance ramp to Interstate 240. He pursued the driver of the van and saw him in a parking lot, waving his arms and stumbling back and forth. Colyer testified that he observed that the defendant, who was driving the van, smelled of alcohol and that his speech was slurred. The defendant told Colyer that the motorcycle ran into him, he had drunk a beer, and he did not have a driver's license. In Colyer's opinion, the defendant was not in a suitable condition to drive a vehicle.

Officer Marlon Wright of the Memphis Police Department testified that he was called to the scene of the accident. He detained the defendant and returned him to the scene of the accident, observing that he smelled of alcohol, had bloodshot eyes and slurred speech, and claimed to be unsure of what had happened. He placed the defendant in the back of his car for approximately ten minutes. When he removed the defendant, the back of the car had a very strong odor of alcohol. On cross-examination, Officer Wright acknowledged that he did not witness the accident and that the defendant was cooperative with him.

Officers John Simpson and Jeff Farr of the Memphis Police Department testified that they arrived at the scene after Officer Wright. Both observed that the defendant was disoriented, had bloodshot and watery eyes, and emitted a strong odor of alcohol. It took the defendant several minutes to retrieve his identification from his pockets after requested to do so by Officer Simpson.

They transported the defendant to the Regional Medical Center to give a blood sample.

Sergeant William C. Porter of the Memphis Police Department Special Traffic Investigation Unit interviewed the defendant at the scene. After being advised of his Miranda rights, the defendant told Sergeant Porter that he was on his way to pick up his daughter from work. The defendant said he had a green arrow as he approached the intersection, and, when the arrow changed to yellow, he sped up to make the turn and his car was struck. He said he did not see the other vehicle involved in the accident. Sergeant Porter testified that the defendant smelled of alcohol, his eyes were bloodshot and watery, and he had a "sleepy appearance about him." Sergeant Porter then administered field sobriety tests. The defendant recited the alphabet correctly, but did not satisfactorily complete the one-leg stand or heel-to-toe tests. Consequently, Sergeant Porter formed the opinion that the defendant was too impaired to safely operate a motor vehicle.

Mark Dunlap, a forensic scientist with the Tennessee Bureau of Investigation, testified that he analyzed the blood sample taken from the defendant on the night of the accident and found that the blood alcohol concentration of the sample was 0.12%.

Diane Joyner, the safety examiner supervisor for the Memphis office of the Tennessee Department of Safety, testified that on July 25, 2001, the defendant's record showed that his driver's license was suspended, revoked, or canceled.

Dr. O.C. Smith, the Shelby County Medical Examiner, performed the autopsies on both victims, determining that each died of multiple injuries inflicted accidentally, which was consistent with their being involved in an automobile collision.

Id. at *1-2. After the jury convicted the defendant of two counts of aggravated vehicular homicide, felony and misdemeanor leaving the scene of an accident, and driving while license revoked, a hearing was conducted at which the State presented evidence of the defendant's prior convictions for DUI and driving while his license was cancelled, suspended, or revoked. Id. at *2.

The parties presented no new evidence at the resentencing hearing but instead relied on the record from the trial and the previous sentencing hearing. Defense counsel conceded

that the defendant was "a serial drunk driver" with a record that spanned approximately twenty years. He also acknowledged that the legislature has chosen to treat drunk driving that results in a death much more harshly than drunk driving that does not. He argued, however, that the legislature's vastly differing treatment of the offenses was "illogical" and "unjust" and resulted in the defendant's having received an inequitable sentence for the same behavior that by "happenstance" resulted in the death of two individuals. Defense counsel requested that the trial court take the inequities of the sentences imposed for the different offenses into account when setting the defendant's sentences for aggravated vehicular homicide within the appropriate range.

The trial court, although commenting that counsel's view on moral culpability was an "interesting proposition," nonetheless rejected the argument and sentenced the defendant to the same sentences as originally imposed, finding that the defendant's extensive history of drunk driving offenses warranted the enhanced sentences in the case.

## ANALYSIS

The defendant argues on appeal, as he did before the trial court, that "there exists a fundamental inequity when two people, both of whom are serial drunk drivers, whose licenses had been suspended or revoked, and who were violators over a long period of time, receive vastly different sentences based on circumstances beyond their control and unrelated to their moral culpability." The State responds that the defendant cannot reasonably argue that an unjustified disparity in sentencing exists when two different defendants are sentenced for entirely different criminal offenses. The State further argues that the trial court properly enhanced the sentences to the maximum based solely on its consideration of the defendant's criminal record and the facts and circumstances of the offense. We agree with the State.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d)(2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any

evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103,-210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

The record reveals that the trial court appropriately enhanced the sentences to the maximum allowed within the range based on the circumstances of the offense and the sole enhancement factor of the defendant's previous criminal convictions. The trial court's ruling states in pertinent part:

> We've reviewed the current and the past law concerning this case. The Court's familiar with Blakely. The Court has reviewed the long record of the defendant and it appears to the Court that the defendant did not only run these people down but he had presence of mind to leave the scene to try to escape and not be involved in what he knew that he had done, which was a tragic thing. The Court believes that the long record that we have here is something that happens in our lifetimes and that the history of our life catches up with us one way or another. If you have negative matters that you deal with in your life, the Court finds that these are very negative, that this man never learned his lesson about drinking and driving and it was just a matter of time before he either killed himself or killed others. And, he killed others. And, I find that in this particular case that the sentence should remain the same. I think whatever the Court of Appeals wants to do on it, it's certainly their right. But, if there's any case that deserves the sentencing that this Court has given it in this case and [m]y view does.

The defendant's complaint that his punishment is inequitable when compared to similarly situated defendants whose drunk driving does not cause anyone's death is an issue more properly addressed to the legislature, which has "[t]he power to define what shall constitute a criminal offense and to assess punishment for a particular crime." State v. Burdin, 924 S.W.2d 82, 87 (Tenn. 1996) (citing State v. Hale, 840 S.W.2d 307, 314 (Tenn. 1992); Hunter v. State, 496 S.W.2d 900, 902-03 (Tenn. 1972); Woods v. State, 169 S.W.

558, 559-60 (Tenn. 1914)). We, therefore, affirm the sentences imposed by the trial court.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE