# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 10, 2010 Session

## HALEY MARIAH ANDERSON, ET AL. v. PAUL E. STANTON, JR., ET AL.

**Appeal from the Chancery Court for Washington County**
**No. 36989     G. Richard Johnson, Chancellor**

---

**No. E2009-01081-COA-R3-CV - FILED MAY 26, 2010**

---

Haley Mariah Anderson and Macey Elizabeth Anderson ("the Children") by next friend and father, Mac Todd Anderson ("Father"), sued Paul E. Stanton, Jr. ("Stanton"), Hal Knight ("Knight"), Deborah Defrieze ("Defrieze"), d/b/a East Tennessee State University, University School ("University School")[1] (or collectively "Defendants"), and the Washington County Board of Education seeking, in part, to prevent University School from withdrawing the Children from enrollment in University School due to alleged actions of the Children's mother, Treda Anderson ("Mother"). Defendants filed a motion for summary judgment. The Trial Court held a hearing on Defendants' motion for summary judgment, entered an order granting Defendants summary judgment, and certified the order as final pursuant to Tenn. R. Civ. P. 54.02. The Children appeal to this Court the grant of summary judgment primarily raising an issue regarding procedural due process. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Guy W. Blackwell, Gray, Tennessee, for the appellants, Haley Mariah Anderson and Macey Elizabeth Anderson by next friend and father, Mac Todd Anderson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Melissa Moreau, Assistant Attorney General, for the appellees, Paul E. Stanton, Jr., Hal

---

[1]The Washington County Board of Education is not involved in this appeal. We will refer to defendants Stanton, Knight, and Defrieze d/b/a University School collectively as "Defendants" with the understanding that although they are the only defendants involved in this appeal, they are not the only defendants involved in this lawsuit.

Knight, and Deborah Defrieze, d/b/a East Tennessee State University, University School.

**OPINION**

**Background**

University School is a public school in Washington County, Tennessee that is considered to be a school of mutual choice. Admission to University School is determined first by a lottery and then by an interview process. The Children were enrolled as students in University School and each had attended University School since kindergarten. At the beginning of 2008, the older of the Children was in the eighth grade and the younger was in the third grade at University School.

Students who are enrolled at University School and their parents sign a copy of the University School Student/Parent Handbook ("the Handbook"), which provides, in pertinent part:

> University School students are subject to all public school laws, the policies and regulations of the Tennessee State Board of Education as stated in the Tennessee Code Annotated (TCA), and the policies and regulations of the State University and Community College System of Tennessee as administered through the President of ETSU.

> * * *

> Parent/Students Code of Conduct: Attending University School is your choice. Please note that University School also has the choice at anytime to convene a committee to discuss options which may include withdrawal when academic progress, behavior or attendance becomes a concern. Withdrawal may also result when the conduct of any student or parent is determined to interfere with the operation of University School or ETSU.

> In early January parents/guardians of currently enrolled students are mailed a letter to re-enroll their child. Parents must return this enrollment form and materials fee by the specified date or the child's position in the school will be considered open. This child will then be placed at the bottom of the waiting list; not on the sibling list.

> * * *

University School is not the primary school of assignment, but rather a school of mutual choice.

\* \* \*

University School may require withdrawal of an entire family from the school if a determination is made that the parents and/or students have interfered or continue to interfere with the peaceful operation of University School or ETSU. Any such decision is subject to review by the President of the University.

\* \* \*

University School is not the primary school of assignment, but rather a school of mutual choice. University School has the option, with appropriate consultation, to withdraw any child or children from the school if the parents/guardians consistently conduct themselves in a manner which interferes with the operation, safety, academic or extra curricular activities of the school. Determinations to withdraw children from the school on such grounds are reviewable by the President of the University or his designee.

By letter dated February 7, 2008, Father and Mother were notified by University School that the Children would be withdrawn from University School on March 1, 2008 due to alleged incidents involving Mother. The February 7, 2008 letter notified Father and Mother that they had the right to appeal the withdrawal to Stanton, the President of the University. As directed, Mother submitted to Stanton a written response to the February 7, 2008 letter in which she denied the truth of three of the four alleged incidents detailed in the February 7, 2008 letter. In her letter, Mother apologized for one of the stated incidents, one which involved Mother distributing inappropriate notes about University School administration written on donut bags and given to some University School employees. Father and Mother also requested a meeting with Stanton and were allowed to submit their position in writing, but they were not allowed to ask him any questions. Father and Mother argue that their meeting with Stanton did not constitute a hearing. After Father and Mother met with Stanton, they were informed by letter that Stanton had decided to uphold the decision to withdraw the Children from University School.

The Children, through Father, sued the defendants under 42 U.S.C. § 1983 claiming, in part, that the Children had a property right to continue their education at University School due to a contract created by the Handbook and that they had been denied

procedural due process when they were withdrawn from enrollment. Mother is not a party to this lawsuit.

The Children filed a motion for a temporary restraining order seeking an order "restraining Defendants from prohibiting [the Children] from entering and pursuing their public education at ETSU University School." The Trial Court held a hearing on the motion for a temporary restraining order and entered its order on April 16, 2008 finding and holding, *inter alia*, that the Children would be permitted to attend University School "during the pendency of this proceeding or other Orders of this Court," that Mother was prohibited from entering University School and ordered to have no contact with University School employees, and that Father would conduct any and all contacts with University School employees regarding the Children's curricular or extracurricular activities during the pendency of this suit.

Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. After a hearing, the Trial Court entered an order denying the motion to dismiss. Defendants then filed a motion for summary judgment supported, in part, by the affidavit of Stanton, which provided, in pertinent part:

> I had no involvement in the decision to withdraw the Anderson children from University School. Per University School policy, I am authorized to hear appeals from a decision to withdraw. As President of East Tennessee State University, I have the authority to reinstate children who are withdrawn.
>
> My office received a letter dated February 8, 2008, from Mrs. Anderson. In the letter she requested information as to an appeal of her children's withdrawal from University School. I advised her to the appeal process. She responded with a narrative of her position. A hearing was conducted on March 17, 2008. I heard the Andersons['] appeal. Mrs. Anderson had the opportunity to tell me her side of the story in regard to the reasons for the withdrawal. I considered the letter of withdrawal, Mrs. Anderson's written and verbal responses, and the voluminous information which had been accumulated over the years. I decided to uphold the withdrawal and so notified the Andersons on March 18th.

Stanton also gave a deposition during which he testified he met with Mother and Father on March 17, 2008 in his office. When asked if there were ground rules for the meeting, he testified: "One of the ground rules was that I was not serving and this is my interpretation as a witness, therefore no questions were to be asked of me. Otherwise, they could bring whatever information with them in writing or ready for verbal presentation."

Stanton testified that he asked Mother and Father "quite a number" of questions during the meeting. He further stated that prior to this meeting he had reviewed "every single document that University School had on the matter or that Mr. Kelly may have had in his office or human resources had in its office." The meeting lasted approximately one hour.

Stanton testified that after the meeting, he "went back through every page, every document again, including the document that [Mother and Father] had sent forward themselves" before making his decision. He stated that his "intention [with regard to the appeal of the withdrawal decision] and what was carried out was a review from the beginning" and that he reviewed the matter de novo. When asked if he made any findings of fact as a result of his review of the record, he testified:

> Well, in a couple of cases between the time the Andersons were in my office and my letter that went out there was further review of an incident with Tracy Smith, in which the Andersons said that they were not present neither one of them on the date indicated, I think it was February 1st. We checked with Dr. Defrieze and the student. They both indicated seeing Mrs. Anderson on the ramp - - I'm not even sure what the ramp is - - on that date. So she was on the campus. And I believe there was also the recheck into the situation with the doughnut bag and Mrs. Anderson indicating that she had only done that in the privacy of offices. She admitted in my office to having done that in the privacy of their offices. Two employees of University School had come forward. We went back; double checked that to make certain that they were done in the hallway. So I had two issues of significant credibility on a couple of these factors.

After a hearing on Defendants' motion for summary judgment[2], the Trial Court entered its order on April 21, 2009 granting Defendants summary judgment, holding that the restraining order allowing the Children to remain at University School pending the outcome of the case would expire, and directing entry of a final judgment as to Defendants pursuant to Tenn. R. Civ. P. 54.02. The Children filed an appeal to this Court.

On June 30, 2009, the Children filed with this Court an Ex Parte Application for Restraining Order seeking an order prohibiting Defendants from withdrawing the Children from University School before the start of the 2009-2010 school year pending the outcome of their appeal. This Court denied the ex parte application by order filed July 2,

---

[2]Plaintiffs also filed a motion for summary judgment. The time for Defendants to respond to this motion had not run when the Trial Court held its hearing on Defendants' motion for summary judgment. As a result, the Trial Court heard argument at that time on Defendants' motion only.

2009 finding and holding, *inter alia*, that the Children had failed to comply with Tenn. R. App. P. 7(a) and present the request first to the Trial Court.

On July 9, 2009, the Children filed with the Trial Court an Ex Parte Application for Restraining Order seeking an order prohibiting the defendants from withdrawing the Children from University School pending an appeal. The Trial Court denied the application. The Children then filed a motion seeking to have this Court review the Trial Court's denial of their application for a stay of judgment pending appeal. By order filed July 24, 2009, this Court denied the motion finding and holding, *inter alia*:

> First, the [Defendants] were never served with the motion to stay filed by [the Children] in the trial court. Second, [the Children] did not file the motion in the trial court until July 9, 2009, over two months after entry of the judgment and the day after the commencement of the 2009-2010 school year at East Tennessee State University's K-12 public school. Even [the Children's] first attempt to obtain a stay of execution of the judgment, filed before [they] filed any motion for stay with the trial court, was not filed with this court until June 30, 2009. Under the circumstances, it cannot be argued that [the Children] would have suffered immediate and irreparable injury, loss or damage before notice of a motion for stay could be served on [Defendants], and a hearing had on such motion, if [the Children] had sought relief from the trial court in a more timely fashion. *See* Tenn. R. Civ. P. 65.03 (authorizing the granting of a restraining order, without notice to the adverse party, only if it is clearly shown that "the applicant's rights are being or will be violated by the adverse party and the applicant will suffer immediate and irreparable injury, loss or damage before notice can be served and a hearing had thereon").

### Discussion

Although the Children raise two issues on appeal, the dispositive issue is whether the Trial Court erred in granting summary judgment to Defendants. Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

-6-

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

In the case now before us on appeal, the Trial Court found and held, *inter alia*, that the Children did not have a property interest in continued attendance at University School, and, even if they did, they were not deprived of procedural due process when they were withdrawn from University School. As this Court has explained:

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

-7-

any state deprive any person of life, liberty, or property, without due process of law…." Article I, section 8 of the Tennessee Constitution states that "no man shall be … deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." The phrase "law of the land" is synonymous with the phrase "due process of law" found in the Fourteenth Amendment. *State v. Hale*, 840 S.W.2d 307, 312 (Tenn. 1992).

The first question that arises in addressing [the issue of whether there has been a violation of the due process clauses of the Tennessee and United States Constitutions] is whether the plaintiffs have identified a "liberty" or "property" interest that triggers the due process requirements. As the United States Supreme Court's teaching in *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972), makes clear,

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

> \* \* \*

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*C.S.C. v. Knox County Board of Education*, No. E2006-00087-COA-R3-CV, 2006 Tenn. App. LEXIS 802, at \*\*25-28 (Tenn. Ct. App. Dec. 19, 2006), *no appl. perm. appeal filed*.

Defendants argue on appeal that the Children have no property right in their continued attendance at University School. Plaintiffs argue that the Children do have a contractual property right created primarily by the Handbook. Defendants concede that the Children's parents were required to sign "such an agreement and agreed to conduct themselves pursuant to University School policies."

Defendants rely, in part, upon the case of *Ward v. Athens City Bd. of Educ.*, in which the United States Court of Appeals for the Sixth Circuit held that the plaintiff children in that case had no property right in continued attendance at the specific public school where

they were tuition students. *Ward v. Athens City Bd. of Educ.*, No. 97-5967, 1999 U.S. App. LEXIS 22766, at \*\*21-22 (6th Cir. Aug. 11, 1999)[3]. The *Ward* case, however, is easily distinguishable from the case now before us on appeal in that the Athens City Board of Education had a written policy which stated: "The Board of Education reserves the right to accept or reject any tuition student(s) on an annual basis." *Id*. at \*2.

In contrast, the Handbook provided that once properly enrolled, University School students would have the right to remain at University School until graduation unless they failed to pay fees, failed to submit re-enrollment paperwork each year, or were subject to withdrawal for problems with academic progress, behavior, attendance, or conduct by the student or parent which interfered with the operation of University School or ETSU. Defendants rely upon the parents having "agreed to conduct themselves pursuant to University School policies" as set forth in the Handbook as the basis for the withdrawal of the Children from University School. That same Handbook provides that the Children could continue at University School until graduation absent certain circumstances as detailed in the Handbook. Thus, the language of the Handbook created a contractual right to continued enrollment at University School except in certain specified circumstances. As such, we hold that the Children did have a property interest in continued enrollment at University School that triggered due process protections.

We thus must consider whether the Children received procedural due process. As pertinent to this issue, the United States Supreme Court has instructed:

> "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S., at 481, 92 S. Ct., at 2600. We turn to that question, fully realizing as our cases regularly do that the interpretation and application of the Due Process Clause are intensely practical matters and that "[the] very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 1748, 6 L. Ed. 2d 1230 (1961). We are also mindful of our own admonition:
>
> > "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint…. By and large, public education in our Nation is committed to the control of state and local authorities." *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S. Ct. 266, 270, 21

---

[3]We note that the *Ward* case is an unreported case and may only be cited in a court in the Sixth Circuit in limited situations pursuant to the Sixth Circuit Rules.

L. Ed. 2d 228 (1968).

There are certain bench marks to guide us, however. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), a case often invoked by later opinions, said that "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id*. at 313, 70 S. Ct. at 657. "The fundamental requisite of due process of law is the opportunity to be heard," *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S. Ct. 779, 783, 58 L. Ed. 1363 (1914), a right that "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to … contest." *Mullane v. Central Hanover Trust Co., supra*, 339 U.S. at 314, 70 S. Ct. at 657. *See also Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S. Ct. 1187, 1190, 14 L. Ed. 2d 62 (1965); *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 168-169, 71 S. Ct. 624, 646-647, 95 L. Ed. 817 (1951) (Frankfurter, J., concurring). At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given *some* kind of notice and afforded *some* kind of hearing. "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Baldwin v. Hale*, 1 Wall. 223, 233, 17 L. Ed. 531 (1864).

It also appears from our cases that the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved. *Cafeteria Workers v. McElroy, supra*, 367 U.S. at 895, 81 S. Ct. at 1748; *Morrissey v. Brewer, supra*, 408 U.S. at 481, 92 S. Ct. at 2600.

\* \* \*

We do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency. Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against

-10-

unfair or mistaken findings of misconduct and arbitrary exclusion from school.

There need be no delay between the time "notice" is given and the time of the hearing.

\* \* \*

We stop short of construing the Due Process Claus to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident.

*Goss v. Lopez,* 419 U.S. 565, 577-83, 95 S. Ct. 729, 738-40, 42 L. Ed. 2d 725 (1975) (footnote omitted). The *Goss* case involved students who were facing up to a ten day suspension from school as a disciplinary measure due to alleged conduct of the student. *Goss*, 419 U.S. at 568.

The Children argue, in part, that they did not receive sufficient notice of the withdrawal to satisfy due process requirements because they never were notified that the Appeals Committee, which made the initial decision to withdraw the Children, was meeting to discuss Mother's alleged actions. While it may be true that the Children and their parents were not notified that a meeting had been called to discussed Mother's alleged actions, the Children ignore that they did receive notice several weeks before the date upon which the withdrawal was to occur. The February 7, 2008 letter notifying Father and Mother about the withdrawal gave notice that the Children would be withdrawn from University School on March 1, 2008, and also that they had a right to appeal that decision. Because the Children received notice of the impending withdrawal in ample time to allow them to contest the decision, we find that notice was given sufficient to satisfy due process requirements.

The Children also argue that they did not receive a hearing sufficient to satisfy due process requirements. They contend that they were not given a proper hearing because the decision to withdraw the Children was made based in part upon evidence which would not be admissible in court, or evidence which constitutes hearsay. They further argue that they were not granted a proper hearing because they were not allowed to ask questions or to cross-examine witnesses.

The United States Supreme Court, however, has instructed that a proper hearing in a school setting for purposes of procedural due process does not necessarily require formal "trial-type procedures [which] might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational

-11-

effectiveness." *Id*. at 583. Father and Mother were given the opportunity to submit to Stanton in writing any materials they chose to support their appeal of the withdrawal decision. The February 7, 2008 letter clearly informed the Children, Father, and Mother of the allegations upon which the withdrawal decision was based. Furthermore, Father and Mother requested and were granted a meeting with Stanton in which they were able to answer any and all questions Stanton had with regard to the allegations. In short, they were given ample opportunity to tell Mother's side of the story.

We cannot say that the potential deprivation of property that will occur in this case, i.e., the Children will be withdrawn from, and no longer allowed to attend, University School, is significantly more serious than the potential deprivation that the United States Supreme Court discussed in *Goss*. In *Goss*, the students were facing suspensions as a disciplinary measure, which would mean that, if the suspensions were upheld, the student would be deprived of public education for the length of the suspension, and would be subject to having the discipline recorded in his or her educational record. *Id*. at 574-75.

In contrast, the Children are not facing disciplinary measures of any sort. Even if the withdrawal is upheld, no information adverse to them will be noted in their educational records. Furthermore, even if the withdrawal is upheld, the Children will not be losing even one day of publicly-funded education. Instead, they simply will not be able to attend University School. They still will be free to attend the public school zoned for the area in which they live, which is what they would have been entitled to do if they never had been admitted to University School via the lottery system. As the potential deprivation cannot be said to be significantly more serious than the deprivation faced by the plaintiffs in *Goss*, we will not say that a level of due process higher than the one granted in *Goss* is necessary to satisfy notions of minimum due process.

In their brief on appeal, the Children also argue:

As a public school, University School was subject to T.C.A. 49-6-3007, which defined the term expelled as "removed from the pupil's regular school program at the location where the violation occurred or moved from school attendance altogether as determined by the school official." That was clearly what happened here, it was [the Children's] public education at University School that was threatened and under T.C.A. 49-6-3401 and the U.S. and Tennessee constitutions, at least minimum due process was required.

While we agree with the assertion that "minimum due process was required," the Children are mistaken in their assertion that Tenn. Code Ann. § 49-6-3401 applies in this case. This statute applies to situations where a student is subject to suspension or expulsion from school

as discipline for that student's own wrongful actions. In the case now before us on appeal, the Children are not being disciplined and are not subject to suspension or expulsion for their own wrongful actions. Tennessee Code Ann. § 49-6-3401 is wholly inapplicable given the facts and circumstances in this case.

The Children also discuss in their brief on appeal an ETSU "post-secondary Telephone Directory and Student Handbook," which they assert provided procedural due process procedures that should have been followed in their case. Importantly, we note that this directory and handbook was applicable to post-secondary students enrolled at ETSU and not students enrolled at University School. Furthermore, and even more importantly, as best as we can tell from the record before us on appeal, the procedures detailed in the ETSU directory and handbook apply in disciplinary circumstances in the same manner as does Tenn. Code Ann. § 49-6-3401, and, just like the statute, are not applicable to the factual situation in the case now before us.

After a careful and thorough review of the record on appeal, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the Children, as we must, we find that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. The Children had a property right in continued enrollment in University School which triggered due process protections. The Children received due process when they were notified by the February 7, 2008 letter that the withdrawal would occur several weeks later, and also were provided an opportunity to a de novo appeal to Stanton of the withdrawal decision. Given this, we hold that the Trial Court did not err in granting Defendants summary judgment.

Our determination that the Children received procedural due process pretermits the necessity of considering whether Defendants are entitled to qualified immunity.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, Haley Mariah Anderson and Macey Elizabeth Anderson by next friend and father, Mac Todd Anderson, and their surety.

 

 

_____
D. MICHAEL SWINEY, JUDGE

-13-