**STATE of Minnesota, Respondent,**

v.

**David William SCHMITZ, Appellant.**

**No. CX–96–750.**

Court of Appeals of Minnesota.

Jan. 28, 1997.

Review Denied April 15, 1997.

Hubert H. Humphrey, III, Attorney General, Mary J. Theisen, Assistant Attorney General, St. Paul, for Respondent.

Belvin L. Doebbert, Pope County Attorney, Glenwood, for Respondent.

John M. Stuart, State Public Defender, Bruce L. McLellan, Special Assistant Public Defender, Minneapolis, for Appellant.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and HARTEN, JJ.

## OPINION

HARTEN, Judge.

David Schmitz appeals his convictions for attempted domestic abuse murder and pattern harassment, arguing (1) that because specific intent is not an element of domestic abuse murder, he cannot be lawfully prosecuted for attempted domestic abuse murder, (2) that his due process right to a fair trial was violated, and (3) that the jury instructions contained errors of fundamental law. We affirm the conviction for pattern harassment, but reverse and vacate the conviction and sentence imposed for attempted domestic abuse murder.

## FACTS

Schmitz and Susan Raner met in June 1993 and subsequently lived together on his dairy farm in Villard. On August 11, 1995, after Raner was hospitalized with a severe brain injury, Schmitz was charged with attempted domestic abuse murder, first-degree assault, and pattern harassment. At trial, the state produced evidence of Schmitz's past verbal and physical abuse of Raner. A social worker testified that she received a referral from the Pope County District Court to perform an anger management evaluation on Schmitz. Schmitz admitted to the social worker that he orally threatened to hit Raner, threw objects at her, restrained her, pushed her, slapped her, physically threw and dragged her, pulled her hair, and kicked her. A house guest saw Schmitz slap Raner on the face with an open hand. A witness at a bar saw Schmitz pull Raner by her hair and then hit her in the face two or three times. On the same occasion, the bartender saw Schmitz slap Raner on the face with an open hand. A police officer, responding to a call at the Schmitz residence, saw Schmitz throw a plastic jug at Raner, which hit her in the chest. Raner was often seen with bruises on her arms, legs, and face, including black eyes.

Schmitz repeatedly moved to dismiss the attempted domestic abuse murder charge on the ground that he could not be convicted of attempting an unintentional crime. The district court denied his motions. The jury convicted Schmitz on all three charges, and the district court sentenced him to concurrent statutory maximum terms of 240 months respectively for attempted domestic abuse murder and first-degree assault, and a concurrent 23 months for pattern harassment. Schmitz appeals.

## ISSUES

1. Does the law permit a charge of attempted first-degree domestic abuse murder?

2. Was Schmitz's due process right to a fair trial violated?

3. Did the jury instructions contain plain error affecting substantial rights or error in fundamental law?

## ANALYSIS

1. Whoever causes the death of a human being while committing domestic abuse, having engaged in a past pattern of domestic abuse on the victim, and the death having occurred under circumstances manifesting an extreme indifference to human life, is guilty of murder in the first degree (domestic abuse murder). Minn.Stat. § 609.185(6) (1996). "Domestic abuse" is defined as an act that constitutes a violation of one of several enumerated statutes, including assault in the fifth degree and terroristic threats, and is committed against the victim who is a family or household member. Minn.Stat. § 609.185 (1996). "Family or household members" include persons who are presently residing together or who have resided together in the past. Minn.Stat. § 518B.01, subd. 2(b) (1996).

Schmitz argues that because domestic abuse murder is founded on general intent, not specific intent, he cannot be prosecuted for *attempted* domestic abuse murder. *See State v. Robinson,* 539 N.W.2d 231, 236 n. 6 (Minn.1995) (domestic abuse murder "requires neither premeditation nor specific intent to kill"). The problem arises from a

contradictory joinder of elements created by linking the anticipatory crime of attempt (which requires specific intent) to domestic abuse murder (which requires general intent).

■ The crime of attempt as set forth in Minn.Stat. § 609.17, subd. 1 (1996), provides in part:

> Whoever, *with intent to commit a crime,* does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime * * *.

(Emphasis added.) "Specific intent that would give rise to an attempt to commit a certain crime is the intent to commit that *particular* crime." *State v. Zupetz,* 322 N.W.2d 730, 735 (Minn.1982). Here, the particular crime involved is domestic abuse murder. The state argues that because Schmitz assaulted Raner "under circumstances manifesting an extreme indifference to human life," he necessarily specifically intended to cause Raner's death. But we fail to see how the "extreme indifference" language is helpful to show specific intent to commit domestic abuse murder. The extreme indifference element is an environmental element; it describes surrounding circumstances unrelated to intent. Moreover, any degree of indifference suggests a lack of concern and is related to negligence or recklessness. Negligence involves unawareness of a risk that should be known whereas recklessness involves disregard of a known risk. *Id.* at 733 (quoting 2 Charles E. Torcia, *Wharton's Criminal Law* § 168 at 272 (14th ed.1979)). Neither includes specific intent. Thus, the supreme court has determined that reckless disregard of human life is not the equivalent of a specific intent to kill. *Id.* at 734 (quoting Rollin M. Perkins, *Criminal Law* at 573–74 (2d ed.1969)).

Adopting the supreme court's reasoning in *Zupetz,* one may reasonably conclude that Schmitz acted in a manner manifesting extreme indifference to human life. He may also have intended to kill Raner (although the state did not charge him with attempted intentional murder). But it makes no sense

to say that he *specifically intended* to kill her by being extremely indifferent to human life. Although Raner's injuries were caused by an assault that occurred under circumstances manifesting an extreme indifference to human life, the indifference element does not furnish a mental state consistent with the specific intent required for an attempt.

■ We conclude as a matter of law that the crime of attempted domestic abuse murder cannot be committed under the applicable statutes as enacted. Therefore, we hold that Schmitz's conviction for attempted domestic abuse murder must be reversed and his conviction and sentence for that offense vacated.[1] In view of our reversal of the conviction, we do not reach Schmitz's claims regarding the jury instructions on attempted domestic abuse murder.

2. The state also charged Schmitz with committing felony pattern harassment:

> A person who engages in a pattern of harassing conduct with respect to a single victim * * * in a manner that would cause a reasonable person under the circumstances to feel terrorized or to fear bodily harm and that does cause this reaction on the part of the victim, is guilty of a felony * * *.

Minn.Stat. § 609.749, subd. 5(a) (1996). A "pattern of harassing conduct" is defined as two or more acts within a five-year period, each in violation of one of eleven statutes, including assault in the fifth degree and terroristic threats. *Id.,* subd. 5(b) (1996).

Citing *State v. Hale,* 840 S.W.2d 307 (Tenn.1992), Schmitz argues for the first time on appeal that his prosecution for pattern harassment violated his due process right to a fair trial. In *Hale,* the defendant was charged with first-degree murder for the death of his girlfriend's two-year-old child. In order to find the defendant guilty of first-degree murder, the jury was first required to find the defendant guilty of prior uncharged incidents of misdemeanor child abuse. *Id.* at 312. The Tennessee Supreme Court held that this procedure violated the defendant's right to an impartial jury under the Tennessee Constitution. *Id.* at 313.

---

1. Our reversal of the attempted domestic abuse murder conviction has no impact upon the length of Schmitz's incarceration. Schmitz was

sentenced to serve an identical 240 months for his first-degree assault conviction, which is not at issue in this appeal.

Schmitz argues that, in order to find him guilty of a pattern of harassing conduct, the state must prove beyond a reasonable doubt that he is guilty of committing within a five-year period two or more acts that violate the enumerated statutes in Minn.Stat. § 609.749, subd. 5(b). Citing *Hale,* Schmitz claims that this procedure violates his due process right to a fair trial.[2] *The general rule in Minnesota, however, is that the appellate courts*

will not decide issues which are not first addressed by the trial court and are raised for the first time on appeal even if the issues involve constitutional questions regarding criminal procedure.

*State v. Sorenson,* 441 N.W.2d 455, 457 (Minn.1989). Schmitz concedes that this due process argument was not raised in the trial court. Therefore, we decline to consider it on appeal.

■ 3. Schmitz challenges his conviction for pattern harassment, contending that the district court erred (1) by failing to identify in its jury instructions the specific acts that made up the pattern, (2) by failing to instruct the jury that in order to convict it must find beyond a reasonable doubt that Schmitz at various times in the past violated the underlying criminal statutes constituting the harassment pattern, and (3) by using a special interrogatory as part of the verdict form. Although Schmitz concedes that defense counsel did not object at trial to the jury instruction on pattern harassment or the special interrogatory, the supreme court has held:

The general rule is that if defense counsel fails to object to error at trial, the defendant thereby is deemed to have forfeited his right to have this court consider that error on appeal. However, there are exceptions to this rule. Thus, even if a defendant's trial counsel has failed to object at trial and "preserve" the claim of error for appeal, we are still free to consider the claim on appeal if the error was "plain error affecting substantial rights" or if the claim relates to error in "fundamental law" in the jury instructions.

*State v. Malaski,* 330 N.W.2d 447, 451 (Minn. 1983) (quoting Minn. R. Evid. 103(d)); *see*

*also* Minn. R.Crim. P. 31.02 (plain errors or defects affecting substantial rights may be considered for the first time on appeal). Therefore, we review Schmitz's claims for plain errors affecting substantial rights or errors in fundamental law.

■ The district court instructed the jury that, in order to find Schmitz guilty of pattern harassment, the state must prove all the elements beyond a reasonable doubt. *See State v. Merrill,* 428 N.W.2d 361, 366 (Minn.1988) (due process requires that the state prove each of the elements of the crime beyond a reasonable doubt). The trial court specifically instructed the jury that a "pattern of harassing conduct" was an element of the crime. Schmitz claims that the district court committed an error in fundamental law by not instructing the jury that, in order to find him guilty beyond a reasonable doubt of a pattern of harassing conduct, it must find beyond a reasonable doubt that he committed the applicable underlying criminal offenses. But the statute does not require proof of a pattern of harassment *convictions.* It is enough for the state to prove beyond a reasonable doubt all elements of the pattern harassment statute, including that defendant engaged in a "pattern of harassing conduct," and that defendant acted within the elements of the underlying offenses. Here, the trial court did instruct the jury accordingly. Schmitz also criticizes the jury instructions for failure to define the term "pattern." Under any reasonable definition of "pattern," the evidence of repeated flagrant harassment behavior by Schmitz in this case would fit within it. *See State v. Grube,* 531 N.W.2d 484, 491 n. 11 (Minn.1995) (defendant's conduct constituted a pattern of domestic abuse under any reasonable definition of the term "pattern"). We conclude that the jury instructions adequately set forth the law governing the pattern harassment charge against Schmitz.

■ Schmitz argues for the first time on appeal that the district court committed reversible error by including a special interrogatory as part of the verdict. The jury was instructed that if it found Schmitz guilty

---

2. *Hale* involves unique proportionality problems and a Tennessee statute that contains death pen-

alty provisions; obviously, it is not controlling law in Minnesota.

of pattern harassment, it was to answer the following question:

> Did defendant commit two or more acts constituting terroristic threats or assault in the fifth degree against Susan Carol Raner prior to August 10, 1995?

In criminal cases, a special interrogatory may be used if it relates solely to sentencing and does not tend to lead a jury to a finding of guilt. *State v. Robinson,* 476 N.W.2d 896, 903 (Minn.App.1991), *aff'd as modified,* 480 N.W.2d 644 (Minn.1992). Here, the special interrogatory addressed whether Schmitz engaged in a pattern of harassing conduct. Because the special interrogatory did not relate solely to sentencing, we conclude that the district court erred by submitting the special interrogatory to the jury. Nevertheless, we hold that the error was harmless beyond a reasonable doubt because the special interrogatory did not lead the jury to a finding of guilt. *See id.* (because court instructed jury to answer interrogatory only if it found defendant guilty, there was no tendency interrogatory could lead to a finding of guilt).

Finally, Schmitz argues that the special interrogatory contained an error of fundamental law because it did not include the appropriate burden of proof. We disagree. There is no reason to believe that the special interrogatory misled the jury into applying a standard other than the standard of beyond a reasonable doubt that appeared elsewhere several times in the district court's instructions.

### DECISION

Schmitz cannot be convicted of attempted domestic abuse murder. Domestic abuse murder excludes specific intent as an element. The conviction and sentence imposed for attempted murder in the first degree (domestic abuse murder) are vacated. The district court adequately instructed the jury on the pattern harassment charge. The use of a special interrogatory in the jury verdict was harmless error.

**Affirmed in part and reversed in part.**