**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1062**

State of Minnesota,
Respondent,

vs.

Lisa Dawn Oliver,
Appellant.

**Filed August 19, 2024**
**Reversed and remanded**
**Harris, Judge**
**Dissenting, Wheelock, Judge**

Dakota County District Court
File No. 19HA-CR-22-2736

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Heather Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Harris, Judge; and Klaphake, Judge.*

**SYLLABUS**

Because attempted first-degree assault-harm, without a finding that the victim suffered great bodily harm, is inconsistent with the statutory scheme for assault, and the specific-intent required for an attempt crime conflicts with the general-intent required for

_____

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

first-degree assault (great bodily harm) under Minnesota Statutes section 609.221, subdivision 1 (2022), appellant may not be convicted of attempted first-degree assault-harm.

## OPINION

**HARRIS**, Judge

Appellant Lisa Dawn Oliver was convicted of attempted first-degree assault (great bodily harm) and second-degree assault (dangerous weapon, substantial bodily harm) for cutting P.L.'s neck. The district court denied Oliver's motion for a downward dispositional departure and sentenced her to 45 months in prison for attempted first-degree assault. On appeal, Oliver argues that her conviction for attempted first-degree assault (great bodily harm) must be reversed because that offense is not a crime under Minnesota law because: (1) the statutory definition of assault already includes attempted assault and thus based on this framework a person cannot be guilty of assault involving the infliction of bodily harm based on an attempt theory and (2) the general intent required to be guilty of assault (great bodily harm) and the specific intent required for attempt are irreconcilable. Because the statutory scheme of assault is based on the degree of harm inflicted upon a victim, as opposed to the degree of harm intended, and because the mens rea requirements of assault and attempt are irreconcilable, we reverse and remand for the district court to vacate the entry of judgment on the attempted first-degree assault conviction and enter judgment of conviction for second degree assault and impose a sentence.

# FACTS

Oliver and P.L. were previously in a relationship and share a daughter. In October 2022, when Oliver picked their daughter up from P.L.'s apartment, a confrontation between Oliver and P.L. escalated, and Oliver cut P.L.'s neck with a sharp object. Law enforcement and paramedics arrived shortly thereafter and P.L. was taken to the hospital. P.L. received stitches for the cut. The wound was to the tissue, no arteries were cut, and P.L. did not require surgery. Oliver was eventually arrested, and respondent State of Minnesota charged her with one count of attempted second-degree intentional murder in violation of Minnesota Statutes sections 609.19, subdivision 1(1), one count of attempted first-degree assault (great bodily harm) in violation of violation of Minnesota Statutes sections 609.221, subdivision 1, and 609.17, and one count of second-degree assault (dangerous weapon, substantial bodily harm) in violation of Minnesota Statutes sections 609.222, subdivision 2.

At trial, P.L. testified that he and Oliver had an altercation on the patio outside his apartment, after Oliver came to pick up their daughter. P.L. explained that the altercation started with Oliver calling him names and shoving him. P.L. testified that, after shoving him several times, Oliver told P.L. she was going to kill him and then cut his neck with a sharp object. The police never found the object Oliver used to cut P.L. At the time of trial, P.L. had a visible scar from the cut.

The state also presented testimony from P.L.'s upstairs neighbors. One neighbor testified that she heard a female voice saying, "I'm going to f--king kill you" and "I'm going to f--king stab you." The other neighbor also testified that he heard a female voice saying, "I'm going to f--king kill you."

3

Oliver testified and claimed that she acted in self-defense. According to Oliver, while she was arguing with P.L. he chest-bumped her and she saw a knife "fly out of his hand." She picked up the knife and asked him, "What were you going to do, stab me? What were you going to do, kill me?" Oliver testified that P.L. grabbed her by the throat and shoved her against the door of the patio. She stated that while she was still holding the knife in her hand, she raised her arms to break P.L.'s chokehold and inadvertently cut his throat. Oliver testified that she did not mean to harm or kill P.L. Oliver's roommate, who was in the parking lot near P.L.'s apartment, heard yelling but could not make out what was said.

The jury received instructions on the three charged offenses, the elements of the attempt statute, and self-defense. The jury's instructions as to attempted first-degree assault stated "assault, as used in this charge, is the intentional infliction of bodily harm upon another" (assault-harm). The jury acquitted Oliver of attempted second-degree murder but found her guilty of second-degree assault and attempted first-degree assault. Before sentencing, Oliver moved for a downward dispositional departure. The district court adjudicated the attempted first-degree assault, denied Oliver's motion and imposed a guideline sentence of 45 months in prison. This appeal follows.

**ISSUE**

Is attempted first-degree assault-harm a permissible offense under Minnesota law?

4

## ANALYSIS

Oliver argues that attempted first-degree assault-harm is not an offense under Minnesota law for two reasons, and thus her attempted first-degree assault conviction must be reversed. She advances two reasons in support of this argument. First, she argues that a person cannot commit an attempted first-degree assault based on the attempt statute because the definition of "assault" already encompasses attempted assaults. More specifically, because the statutory scheme of assault is based on the level of harm inflicted, an attempted assault that does not cause harm is necessarily considered a fifth-degree assault unless a weapon is involved. Second, Oliver argues that the mens rea requirement of assault-harm is irreconcilable with that of attempt. Because assault-harm is a general-intent crime, Oliver argues a person cannot be convicted of attempted assault based on the degree of harm intended.[1]

### A. Attempted first-degree assault-harm, without a finding that the victim suffered great bodily harm, is inconsistent with the statutory scheme for assault.

Oliver first argues that her conviction for attempted first-degree assault must be reversed because that offense is inconsistent with Minnesota's statutory assault scheme

---

[1] In the alternative, appellant argues that her conviction for attempted first-degree assault must be reversed because the state lacked sufficient evidence to prove that she intended to inflict great bodily harm. She also argues that the district court abused its discretion in denying her motion for a downward dispositional departure based on the district courts determination that she did not express remorse. We decline to address these arguments because we resolve this case based on the inconsistency between attempted first-degree assault-harm, without a finding that the victim suffered great bodily harm and the statutory scheme for assault, and the conflict between the specific-intent requirement for an attempted crime conflicts with the general-intent requirement of first-degree assault (great bodily harm) under Minnesota Statutes section 609.221, subdivision 1 (2022).

where the definition of assault in Minnesota Statute section 609.02, subdivision 10, already includes attempted assaults. Oliver's arguments require this court to determine whether the attempt statute, Minnesota Statutes section 609.17, subdivision 1 (2022), applies to first-degree assault involving the infliction of bodily harm. Issues of statutory interpretation present a question of law, which we review de novo. *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015).

When interpreting statutes, this court seeks to "effectuate the intention of the legislature." *State v. Dorn*, 887 N.W.2d 826, 830 (Minn. 2016) (quotation omitted); *see also* Minn. Stat. § 645.16 (2022). In doing so, this court first determines "whether the statute's language, on its face, is clear or ambiguous." *State v. Fleck*, 810 N.W.2d 303, 307 (Minn. 2012) (quotation omitted). If the statute is clear, this court enforces its plain meaning. *Id.* On the other hand, "[a] statute is ambiguous only when the statutory language is subject to more than one reasonable interpretation." *Id.* In determining whether a statute is ambiguous, this court may consider the canons of construction. *Riggs*, 865 N.W.2d at 682; Minn. Stat. § 645.08 (2022). One such canon is the whole-text canon, which requires this court to construe the "statute as a whole and interpret its language to give effect to all of its provisions." *Riggs*, 865 N.W.2d at 683. Furthermore, "various provisions of the same statute must be interpreted in the light of each other, and the legislature must be presumed to have understood the effect of its words and intended the entire statute to be effective and certain." *Id.* (quotation omitted).

We begin with the text of the statute.[2] Minnesota's first-degree assault statute provides that anyone who "assaults another and inflicts great bodily harm" may be convicted of assault in the first degree. Minn. Stat. § 609.221, subd. 1. "Assault" is defined as "(1) an act done with intent to cause fear in another of immediate bodily harm or death" (referred to or described as assault-fear) or "(2) the intentional infliction of or attempt to inflict bodily harm upon another" (referred to or described as assault-harm or attempted assault). Minn Stat. § 609.02, subd. 10 (2022); *see Fleck*, 810 N.W.2d at 308 (explaining that there are "two distinct forms of assault recognized by the Legislature," assault-harm and assault-fear). And attempt under section 609.17 is defined as "[w]hoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime." Minn. Stat. § 609.17, subd. 1. Notably, "attempt is an inchoate crime that must be connected to an uncompleted substantive crime that was attempted." *Noggle*, 881 N.W.2d at 549.

---

[2] The dissent takes issue with our decision to begin our analysis by evaluating the assault statutes rather than the attempt statute, relying on *State v. Noggle*, which held that an attempt is not merely a "sentence modifier" and is instead its own crime distinct from the attempted offense. 881 N.W.2d 545, 549 (Minn. 2016). We disagree. In *Noggle*, the supreme court held that, because attempt is a separate crime and not a sentence modifier, the statute that made a ten-year conditional release mandatory for designated sex offenses did not apply to the crime of attempt to commit an enumerated sex offense. 881 N.W.2d at 449-51. In doing so, the supreme court noted that attempt is a "separate crime[] with distinct elements" from the completed crime. *Id.* at 549 (quotations omitted). The supreme court ultimately held that the ten-year conditional-release penalty did not apply, because the legislature did not list an attempt to commit an enumerated offense as a crime requiring registration. *Id*. at 550. The *Noggle* court refused to read language into the conditional-release statute to include attempted crimes. *Id*. *Noggle* did not address the relationship between the elements of a completed and attempted offense and does not control our analysis.

7

Based on these definitions, Oliver argues that a person cannot commit an attempted first-degree assault under section 609.17, subdivision 1, and section 609.221, subdivision 1, because the definition of "assault" already encompasses attempting to inflict bodily harm upon another. Specifically, she contends that, because the statutory scheme of assault is based on the degree of harm inflicted, a charge of attempted assault requires the state to prove that the victim actually suffered the degree of harm required for the relevant degree of assault.

Reading the assault statute as a whole and construing its language so as to harmonize all of its provisions, the statutory scheme of assault is based on the level of harm inflicted, not intended. First-degree assault requires that the defendant assault another *and* inflict *great bodily harm*, Minn. Stat. § 609.221, subd. 1 (emphasis added); second-degree assault requires that the defendant assault another, use a dangerous weapon, *and* inflict *substantial bodily harm*, Minn. Stat. § 609.222, subd. 2 (2022) (emphasis added); third-degree assault requires that the defendant assault another *and* inflict *substantial bodily harm*, Minn. Stat. § 609.223, subd. 1 (2022) (emphasis added); and fifth-degree assault requires that the defendant inflict *or* attempt to inflict *bodily harm*, Minn. Stat. § 609.224, subd. 1(2) (2022) (emphasis added).[3]

---

[3] The fourth-degree assault statute diverges from this statutory framework by focusing instead on the status of the victim assaulted, such as peace officers, firefighters, medical personnel, and correctional employees. Minn. Stat. § 609.2231 (2022). Likewise, subdivisions 2 and 3 of the third-degree assault statute impose punishment based on whether the victim was under the age of four or a minor and subject to a pattern of abuse. Minn. Stat. § 609.223, subds. 2, 3 (2022).

The legislature took additional care to distinguish between each type of bodily harm. "Great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement." Minn. Stat. § 609.02, subd. 8 (2022). "Substantial bodily harm" means bodily injury of "a temporary but substantial disfigurement." *Id.*, subd. 7a (2022). And "bodily harm" means "physical pain or injury, illness, or any impairment of physical condition." *Id.*, subd.7 (2022). Notably, under the first-degree assault provision, the legislature included the conjunctive "and" to indicate that an assault also must result in great bodily harm. Minn. Stat. § 609.221, subd. 1. The legislature also included the conjunctive "and" under subdivision 2 of second-degree assault and subdivision 1 of third-degree assault. Minn. Stat. §§ 609.222, subd. 2 (punishing anyone who "assaults another with a dangerous weapon *and* inflicts substantial bodily harm" (emphasis added)), 609.223, subd. 1 (punishing anyone who "assaults another *and* inflicts substantial bodily harm" (emphasis added)).

Additionally, the legislature included "attempts" in other subdivisions of the first-degree assault statute but did not include attempts in subdivision 1. Under subdivision 2, for example, the legistalture provided, "[w]hoever assaults a peace officer, prosecuting attorney, judge, or correctional employee by using or *attempting* to use deadly force." Minn. Stat. § 609.221, subd. 2 (emphasis added). And in subdivision 4, the legislature wrote, "[w]hoever assaults and inflicts great bodily harm . . . with a dangerous weapon or by using or *attempting* to use deadly force." *Id.*, subd. 4 (emphasis added). The legislature demonstrated that it was aware of and knew how to include attempts in the multi-tiered statutory scheme of assault. If the legislature intended to include attempts in assault-harm

9

under subdivision 1, it would have inserted similar language, such as "with intent to" or "attempting to." "When the Legislature uses limiting or modifying language in one part of a statute, but omits it in another, we regard that omission as intentional and will not add those same words of limitation or modification to parts of the statute where they were not used." *State v. Schwartz*, 957 N.W.2d 414, 419 (Minn. 2021) (quotation omitted).

Despite the framework of the assault statutes, the state argues that a defendant can be convicted of attempted first-degree assault and receive the longer sentence allowed by section 609.221, subdivision 1, and section 609.17, subdivision 4, where the case involves evidence of an intent to inflict greater harm than what the defendant actually caused. But accepting this argument here leads to an illogical result that undercuts the statutory framework of assault. As Oliver argues, it is illogical that a person who intends minimal harm but inflicts great bodily harm would be guilty of first-degree assault and someone who intends great bodily harm but inflicts minimal harm—or no harm at all—would be guilty of attempted first-degree assault. It is true that attempt under section 609.17 divides in half the presumptive sentence for the underlying offense. Minn. Stat. § 609.17, subd. 4; Minn. Sent'g Guidelines §§ 2.A.5; 2.G.2. But here, Oliver's presumptive sentence under section 609.17 is more than double the presumptive sentence for the assault she ultimately committed. Minnesota Statutes section 609.224, subdivision 1(2), states, "anyone who attempts to inflict bodily harm on another" commits an assault. (Emphasis added.) In contrast, first-degree assault, section 609.221, requires an assault plus the infliction of great bodily harm. To attach attempt to first-degree assault would be duplicative of attempted

assault in the fifth-degree. We cannot add the words "or attempts to inflict great bodily harm" to section 609.221.

The plain language of the assault statute confirms that assault is a crime based on the degree of harm inflicted upon a victim, not what a defendant intended. As such, to be convicted of attempted first-degree assault under Minnesota Statutes section 609.17, subdivision 1, with reference to Minnesota Statutes section 609.221, subdivision 1, the state must prove the defendant assaulted another and inflicted great bodily harm, as required by the plain language of the statute. A defendant cannot be convicted of attempted first-degree assault under Minnesota Statutes section 609.17, subdivision 1, with reference to Minnesota Statutes section 609.221, subdivision 1, merely because the state presents evidence that a defendant intended a greater level of harm than the harm that resulted.

**B.      The specific-intent requirement of the attempt statute is irreconcilable with the general-intent requirement of the assault-harm statute.**

Oliver next argues that the general intent required under the first-degree assault-harm statute and the specific intent required under the attempt statute are irreconcilable because the different types of intent require the defendant to want different outcomes when committing the same crime. The state argues that although the mens rea is different for attempt and assault-harm, they are not irreconcilable because the state may prove both that the defendant had the general intent to do the prohibited act and the specific intent to cause the particular result. The issue arises from a contradictory joinder of elements created by linking the anticipatory crime of attempt (which requires specific intent) to first-degree

11

assault (which requires general intent). *See State v. Schmitz*, 559 N.W.2d 701, 703-04 (Minn. App. 1997), *rev. denied* (Minn. Apr. 15, 1997).

Attempt under section 609.17 is a specific-intent crime. *State v. Zupetz*, 322 N.W.2d 730, 734 (Minn. 1982). Specific intent requires "an intent to cause a particular result." *Fleck*, 810 N.W.2d at 308 (quotation omitted). General intent, on the other hand, requires that the defendant "intentionally engag[ed] in the prohibited conduct." *Id.* This does not require that the defendant knew that his actions "would violate the law or cause a particular result." *Dorn*, 887 N.W.2d at 831 (quoting *Fleck*, 810 N.W.2d at 308). Because assault-harm is a general-intent crime, the state need prove only that the defendant intended to do the prohibited act that resulted in bodily harm. *Fleck*, 810 N.W.2d at 309. "[A]ssault statutes do not require a finding by the jury that the defendant intended to cause a specific level of harm." *State v. Vance*, 734 N.W.2d 650, 656 (Minn. 2007), *overruled on other grounds by Fleck*, 810 N.W.2d at 311-12, *Johnson v. State*, 421 N.W.2d. 327, 330-31 (Minn. App. 1988) (addressing the definition of assault and the wording of Minnesota Statute 609.221, subdivision 1 and holding that Minnesota Statute 609.221, subdivision 1 does not require intent to inflict great bodily harm).

The state concedes that "attempt" is a specific-intent crime but maintains that it is not irreconcilable with the general-intent crime of assault-harm. The state argues that, to convict Oliver of assault-harm, it need prove only that she "intended to do the physical act, but [it] does not have to prove that [she] meant to violate the law or cause a particular result." But "[s]pecific intent that would give rise to an attempt to commit a certain crime is the intent to commit that *particular* crime." *Zupetz*, 322 N.W.2d at 735. In other words,

12

where a crime requires a particular result, a person must specifically intend that result to be guilty of attempt. This does not align with the general-intent requirement of assault-harm.

In *Dorn*, for example, the defendant pushed the victim, who was standing near a bonfire, and the victim fell into the burning embers, sustaining substantial burn injuries. 887 N.W.2d at 829. Dorn challenged her first-degree assault conviction because she did not intend to push the victim into the fire. *Id.* The supreme court rejected her challenge and held that, for assault-harm, the defendant needs "only the general intent to do the act that results in bodily harm." *Id.* at 831 (citing *Fleck*, 810 N.W.2d at 309). In *Fleck*, the court held that "[a]lthough the definition of assault-harm requires the [s]tate to prove that the defendant intended to do the physical act, nothing in the definition requires proof that the defendant meant to . . . cause a particular result." 810 N.W.2d at 309.

In *Zupetz*, where the defendant was convicted of attempted second-degree manslaughter, the supreme court held that it is a logical impossibility to have an attempted second-degree manslaughter because the intent involved in culpable negligence is not the same kind of intent involved in an attempt to commit a crime. 322 N.W.2d at 734-35. And while the state also presented evidence that the defendant "may have contemplated killing [the victim] . . . [t]he state may not make such intent *part of the crime itself* merely by introducing evidence of it." *Id.* at 736. *Zupetz* is instructive on the question of whether a person can be convicted of attempted first-degree assault-harm (great bodily harm). First-degree assault, like second-degree manslaughter, is a general-intent crime. In order to be found guilty of first-degree assault, the jury must find that the defendant assaulted and

13

caused a level of harm to the victim. There is no specific intent in the assault-harm provision that Oliver was convicted of, and the state cannot "make such intent part of the crime itself merely by introducing evidence of it." *Id.* (emphasis omitted); *see also Schmitz*, 559 N.W.2d at 704 (applying *Zupetz* and holding that, because domestic abuse murder is founded on general intent, not specific intent, a defendant cannot be prosecuted for attempted domestic abuse murder); *see also State v. Stevenson*, 637 N.W.2d 857, 860-61 (Minn. App. 2002), *aff'd on other grounds*, 656 N.W.2d 235 (Minn. 2003) (citing *Zupetz* and *Schmitz* and considering whether it is impossible to be guilty of attempted fifth-degree criminal sexual conduct based on appellant's claim that fifth-degree criminal sexual conduct requires proof of a reckless or negligent state of mind and any attempt crime requires specific intent to commit the underlying crime, but ultimately concluded that, because fifth-degree criminal sexual conduct is a specific-intent crime, that criminal sexual conduct in the fifth degree is a crime that a defendant can legally be convicted of attempting to commit).

The Minnesota Supreme Court analysis in *State v. GisegeI*, 561 N.W.2d 152, 157 (Minn. 1997), is instructive, where it concluded that first-degree assault-harm is not a lesser included offense of attempted first-degree murder or attempted second-degree murder. In doing so, the supreme court reasoned that first-degree assault-harm includes "great bodily harm" as a necessary element. *Id*. at 156. Attempted first-degree murder or attempted second-degree murder does not require proof of bodily harm and, as such, first degree assault-harm is not a lesser included offense of those crimes. *Id*. If attempted first-degree assault-harm was a recognized offense in Minnesota, the supreme court would have

14

recognized it as a lesser included offense of attempted first-degree murder or attempted second-degree murder because the degree of harm would not be a necessary element.

The state argues that the specific intent required for an attempted crime is not inconsistent with the general intent assigned to assault offenses based on harm. The state cites the supreme court's recent decision in *Tichich v. State*, 4 N.W.3d 114 (Minn. 2024), to support this point. In *Tichich*, the defendant argued that guilty verdicts for both attempted third-degree criminal sexual conduct and third-degree criminal sexual conduct were legally inconsistent. 4 N.W.2d at 123. The state specifically cites to a footnote in *Tichich*, which provided that the offenses were not inconsistent because of the differing mental states: the fact that attempts are specific-intent crimes and third-degree criminal sexual conduct is a general-intent crime did not mean the verdicts were inconsistent. *Id.* at 123 n.9. The supreme court noted that the "intent to sexually penetrate a victim is not legally inconsistent with also finding intent to commit third-degree criminal sexual conduct." *Id.*

Like in *Tichich*, a finding of infliction of bodily harm is not legally inconsistent with a finding of intent to inflict bodily harm; here a person can attempt a general-intent crime, and a person can attempt to assault a person.[4] Infliction of bodily harm is not legally inconsistent with finding an intent to inflict bodily harm.

Unlike the criminal sexual conduct crime in *Tichich*, attempted first-degree assault harm includes another element, the intent to inflict a particular degree of harm. The

---

[4] As addressed above, the definition of assault includes attempting to inflict bodily harm upon another. Minn. Stat. § 609.02, subd. 10.

15

inconsistency lies in the level of harm. "The problem arises from a contradictory joinder of elements created by linking the anticipatory crime of attempt (which requires specific intent) and [first-degree assault under Minnesota Statutes section 609.221, subdivision 1] (which requires general intent)." *Schmitz,* 559 N.W.2d at 704-05. Because assault-harm under Minnesota Statutes section 609.221, subdivision 1, is a general-intent crime, the state must prove that a defendant intended only to do the physical act. *Fleck*, 810 N.W.2d at 309. No intent to cause a particular result is required. *Id.*; *see also Dorn*, 887 N.W.2d at 833. The attempt statute cannot be applied to an assault-harm because of the inconsistent mens rea requirements between an attempt and the level of harm. As a general-intent crime, assault–harm does not require proof that the defendant intended any particular result; it only requires the state to prove that the defendant intended to do the physical act. *Id.* at 309. If the defendant intended to do the physical act constituting assault, then they are liable for whatever degree of harm resulted from that act. *See Dorn*, 887 N.W.2d at 831 (explaining that assault-harm "requires only the general intent to do the act that results in bodily harm").

By applying the crime of attempt to assault-harm, the nature of the offense changes to assault-fear, which requires the state to prove that the defendant not only voluntarily committed the act in question, but also that the defendant did so with the additional intent to cause fear of immediate bodily harm in another. *See Fleck*, 810 N.W.2d at 312 (assault-fear is a specific-intent crime requiring proof of "the intent to cause fear in another of immediate bodily harm or death"). Based on the statutory scheme, if the defendant's assault causes great bodily harm, the person is guilty of first-degree assault, regardless of

16

their specific intent as the supreme court held in *Dorn*. But unlike criminal sexual conduct, where a person can intend to commit a sexually penetrative act and fail to accomplish it and be guilty of attempted criminal sexual conduct, a person who intends to cause great bodily harm but does not accomplish that degree of harm has committed assault-fear and/or a lesser-degree of assault-harm. Adding the degree of assault for an intended level of harm is inconsistent with the statutory scheme of assault and runs contrary to caselaw interpreting the assault-harm statute.

As applied to the instant case, the attempt that occurred was possibly an attempted murder, based on Oliver's statements.[5] And the offense Oliver committed was a completed assault involving infliction of substantial bodily harm. Oliver did not commit a completed first-degree assault because the victim did not suffer great bodily harm, and she could not attempt to commit a crime that involves only general intent to do a volitional act that causes bodily harm and does not have an element of specific intent to cause a particular degree of harm.

In sum, we conclude that a person cannot be convicted of attempted first-degree assault under Minnesota Statutes section 609.17, subdivision 1, with reference to Minnesota Statutes section 609.221, subdivision 1. We therefore conclude that Oliver's conviction for attempted first-degree assault must be reversed.

---

[5] The jury acquitted Oliver of attempted second-degree murder.

**DECISION**

Because attempted first-degree assault-harm, without a finding that the victim suffered great bodily harm, is inconsistent with the statutory scheme for assault, and the specific intent that is required for an attempted crime under Minnesota Statutes section 609.17 (2022) conflicts with the general intent requirement of assault-harm under Minnesota Statutes section 609.221 (2022), appellant may not be convicted of attempted first-degree assault-harm. For the above reasons, we reverse and remand for the district court to vacate the entry of judgment and sentence for appellant's attempted first-degree assault. *See State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984) ("If the adjudicated conviction is later vacated for a reason not relevant to the remaining unadjudicated conviction(s), one of the remaining unadjudicated convictions can then be formally adjudicated and sentence imposed . . . ."). On remand, we direct the district court to adjudicate or enter judgement of conviction on the lesser-included second-degree assault and impose a sentence.

**Reversed and remanded.**

**WHEELOCK**, Judge (dissenting)

I respectfully dissent. I disagree with the majority's conclusion that the general intent required for first-degree assault is irreconcilable with the specific intent required for an attempt, and I would therefore conclude that attempted first-degree assault is a cognizable crime under Minnesota law. And because the evidence was sufficient to prove that appellant Lisa Dawn Oliver acted with the specific intent to commit first-degree assault, I would affirm her conviction.

## I.    Attempted first-degree assault is a cognizable crime.

The critical flaw in the majority's reasoning is that it begins its analysis through an evaluation of the assault statutes rather than the attempt statute, the actual offense of conviction in this case. The Minnesota Supreme Court has held that an attempt is not merely a "sentence modifier" and is instead its own crime distinct from the attempted offense. *State v. Noggle*, 881 N.W.2d 545, 549 (Minn. 2016) (quotation marks omitted). Accordingly, in determining whether a particular set of facts are cognizable as an attempt crime under Minnesota law, the analysis must necessarily begin with an evaluation of the elements of attempt, rather than with the elements of the offense attempted.

The attempt statute states that "[w]hoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt." Minn. Stat. § 609.17, subd. 1 (2022). The words "with intent to" require proof that the person "either has a purpose to do the thing or cause the result specified" or a belief "that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2022); *see also State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012)

("The phrase 'with intent to' is commonly used by the Legislature to express a specific-intent requirement."). And the "[s]pecific intent that . . . give[s] rise to an attempt to commit a certain crime is the intent to commit that *particular* crime." *State v. Zupetz*, 322 N.W.2d 730, 735 (Minn. 1982). Accordingly, whether a person may attempt to commit first-degree assault depends on whether it is possible to specifically intend to commit first-degree assault.

As is relevant here, Minnesota Statutes section 609.221, subdivision 1 (2022), provides that a person commits an assault in the first degree if they "assault[] another and inflict[] great bodily harm." In order, then, for an attempted first-degree assault to constitute an offense in Minnesota, it must be possible for one to specifically intend both to assault another and to inflict great bodily harm. And based upon the definitions the legislature assigned by statute to the terms "assault" and "great bodily harm," it is clear that it is, in fact, possible.

First, the word "assault" is defined, for purposes of chapter 609, as either "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2022). Given the use of the disjunctive "or" in this definition, we interpret it to "require that only one of the possible factual situations be present in order for the statute to be satisfied." *State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000). One is therefore able to assault another by intentionally inflicting bodily harm, and moreover, it should be beyond dispute that one is similarly able to *specifically intend* to inflict bodily harm on another. It therefore follows that one may specifically intend to "assault another"

in this manner, irrespective of what other actions might *also* constitute an assault under its definition.

Second, "great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8 (2022). Although it is a grim prospect, just as a person is capable of specifically intending to cause the death of another, so too is it possible for one to specifically intend the infliction of a nonfatal, yet severe, injury, such as permanent disfigurement or the loss of a bodily member, or an injury that creates a high probability of death.

As such, because it is possible to specifically intend to assault another by inflicting bodily harm, and because it is possible to specifically intend to inflict great bodily harm, it is possible to *specifically intend* to commit a first-degree assault. Accordingly, if it can be proved beyond a reasonable doubt that a defendant specifically intended to inflict great bodily harm upon another and that the defendant took a substantial step toward doing so, it follows that a defendant may rightly be found guilty of attempted assault in the first degree. And for that reason, it is illogical to categorically exclude such an offense from being criminalized in Minnesota.

The majority nevertheless contends that this result is compelled because the specific intent required for an attempt is irreconcilable with the general intent required for first-degree assault. I disagree. General intent requires proof of an "intention to make the bodily movement which constitutes the act." *Fleck*, 810 N.W.2d at 308 (quotation

D-3

omitted).  Specific intent requires proof of the intended result of that act.  Minn. Stat. § 609.02, subd. 9(4).  By these definitions, the two are not mutually exclusive; a person may both volitionally perform an act *and* intend that the act cause a particular result.  *See Tichich v. State*, 4 N.W.3d 114, 123 n.9 (Minn. 2024) (rejecting the argument that third-degree criminal sexual conduct and attempted third-degree criminal sexual conduct required "inconsistent mental states" because "the 'general intent' required for third-degree criminal sexual conduct is intent to sexually penetrate, and the 'specific intent' required for attempted third-degree criminal sexual conduct is the intent to commit that crime").

The majority cites *Zupetz* as support for its contention that specific intent and general intent are irreconcilable.  But *Zupetz* does not hold that a person cannot be guilty of attempting a general-intent crime; it holds that a person cannot be guilty of attempting second-degree manslaughter—a crime that requires a showing of a mens rea that is inconsistent with specific intent: culpable negligence.  322 N.W.2d at 735.  The logic underpinning that conclusion is that a person cannot specifically intend "to commit a crime whose distinguishing element is a lack of intent."  *Id.* (quoting *People v. Brown*, 249 N.Y.S.2d 922, 923 (App. Div. 1964)).  But unlike for second-degree manslaughter, a lack of intent is not a distinguishing element of first-degree assault.  *See* Minn. Stat. § 609.221, subd. 1.

The majority also relies on *State v. Schmitz*, 559 N.W.2d 701 (Minn. App. 1997), *rev. denied* (Minn. Apr.  15, 1997), but *Schmitz* relies on the same underlying reasoning as *Zupetz* and therefore also does not apply here.  In *Schmitz*, we agreed with the appellant's argument that the attempt statute cannot be applied to domestic-abuse murder because

D-4

"linking the anticipatory crime of attempt (which requires specific intent) to domestic abuse murder (which requires general intent)" created a "contradictory joinder of elements." 559 N.W.2d at 704. Domestic-abuse murder requires proof that "the death . . . occurred under circumstances manifesting an extreme indifference to human life." *Id.* at 703; *accord* Minn. Stat. § 609.185(a)(6) (2022). We interpreted the "extreme indifference" element as "an environmental element" that "describes surrounding circumstances unrelated to intent." *Schmitz*, 559 N.W.2d at 704. Relying on *Zupetz*, we stated that "any degree of indifference suggests a lack of concern and is related to negligence or recklessness" and that "[n]either [negligence nor recklessness] includes specific intent." *Id.* Therefore, *Schmitz* merely reaffirmed that a person cannot be convicted of a crime that requires specific intent and, simultaneously, a mens rea that is inconsistent with specific intent. But unlike domestic-abuse murder, first-degree assault does not require a showing of indifference that would suggest negligence or recklessness. Therefore, the problem of contradictory elements presented in *Schmitz* is not present here.

Following *Zupetz*, in *State v. Landherr*, we rejected the application of the attempt statute to another provision of the manslaughter statute. 542 N.W.2d 686, 688-89 (Minn. App. 1996), *rev. denied* (Minn. Mar. 19, 1996). In that case, we rejected the state's argument that attempted manslaughter is analogous to attempted escape from custody. *Id.* at 689. Escape does not require specific intent; it requires only "intent to do an act that results in the departure from custody." *Id.* (citing *State v. Kjeldahl*, 278 N.W.2d 58, 61 (Minn. 1979)). In other words, escape is a general-intent crime. *State v. Garza*, 3 N.W.3d 18, 21 (Minn. App. 2024) (citing *Kjeldahl*, 278 N.W.2d at 61). In *Landherr*, we concluded

that because "the escape statute does not require a showing of negligence[, a]ttempted escape does not involve the logical impossibility that occurs . . . where an attempted manslaughter would require that a person achieve a specific result through negligence." 542 N.W.2d at 689 (citations omitted).

Just like escape, first-degree assault does not require a showing of recklessness or negligence. *Compare* Minn. Stat. § 609.485, subd. 2 (2022) (criminalizing acts constituting escape from custody), *with* Minn. Stat. § 609.221, subd. 1 (criminalizing acts constituting first-degree assault). Therefore, attempted first-degree assault does not involve the logical impossibility presented in *Zupetz* and *Landherr*, and the specific intent required for attempt is not irreconcilable with the general intent required for first-degree assault.

To the extent the majority argues that recognizing the crime of attempted first-degree assault could result in unfair punishment, our task in this appeal is limited solely to determining whether the crime is cognizable, not whether recognizing it would lead to unfair results. *See Dahlin v. Kroening*, 796 N.W.2d 503, 508 (Minn. 2011) ("When interpreting the statutes, it is [appellate courts'] role to rely on what the Legislature intended over what may appear to be supported by public policy."); *State v. Weaver*, 796 N.W.2d 561, 576 (Minn. App. 2011) ("Determination of what conduct constitutes a criminal offense and the punishment that ought to be imposed . . . is peculiarly a legislative and not a judicial function." (quotation omitted)), *rev. denied* (Minn. July 19, 2011); *cf. State v. Back*, 341 N.W.2d 273, 276 (Minn. 1983) (rejecting argument that challenged the absence of a distinction in the sentencing guidelines between two offenses that involved

different levels of culpability because the classification of those crimes "is a legislative decision").

Therefore, I would conclude that attempted first-degree assault is a cognizable crime.

**II.    The evidence was sufficient to support Oliver's conviction for attempted first-degree assault.**

Because I would conclude that attempted first-degree assault is a cognizable crime, I next address Oliver's argument that the evidence was insufficient to prove that she acted with intent to commit first-degree assault.   Oliver urges us to apply the two-step circumstantial-evidence standard, arguing that her statements indicating her intent would prove only that she acted with intent to kill and that they are not direct evidence of that intent because the jury found her not guilty of attempted murder.  She then argues that the circumstantial evidence could prove only that she acted with intent to inflict bodily harm, the degree of harm required for fifth-degree assault under Minn. Stat. § 609.224, subd. 1(2) (2022), or substantial bodily harm, the degree of harm required for third-degree assault under Minn. Stat. § 609.223, subd. 1 (2022).  The state argues that it proved intent through a combination of direct and circumstantial evidence.

"[W]hen a disputed element is sufficiently proven by direct evidence alone," we apply the direct-evidence standard of review.  *State v. Horst*, 880 N.W.2d 24, 39 (Minn. 2016).  But when a conviction is not adequately supported by direct evidence, we apply a heightened, two-step standard of review.  *See State v. Loveless*, 987 N.W.2d 224, 247 (Minn. 2023).  I therefore determine whether Oliver's statements, "I'm going to f--king kill

D-7

you," and, "I'm going to f--king stab you," constitute sufficient direct evidence of her intent to inflict great bodily harm, as required for first-degree assault.

"Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Id.* (quotation omitted). Intent may be proved by direct evidence when the evidence includes a statement by the defendant that "unambiguously indicate[s]" the purpose of their actions. *Horst*, 880 N.W.2d at 40. In *Horst*, the supreme court concluded that the defendant's statements, "I want him dead," "we can do this," and, "how many rounds did you put in him," constituted direct evidence of intent to support a conviction for first-degree premeditated murder. *Id.* In *State v. Jones*, the supreme court determined that the defendant's statement about how he planned to use a weapon, "to beat [the victim] bloody," made contemporaneously with the defendant's brandishing of the weapon in a consistent way, was direct evidence that the defendant intended to use the weapon "in a manner likely to cause great bodily harm." 4 N.W. 3d 495, 501-02 (Minn. 2024) (quotation marks omitted).

Here, Oliver told the victim, P.L., "I'm going to f--king kill you," and, "I'm going to f--king stab you." Oliver argues that the statement, "I'm going to kill you," could unambiguously indicate only an intent to kill, but that it does not because the jury found her not guilty of attempted murder. She argues that, at most, the statement, "I'm going to stab you," indicates only an unspecified amount of bodily harm. And thus, Oliver argues that the statements cannot be considered direct evidence of her intent to inflict great bodily harm. When evaluating the sufficiency of direct evidence, "we limit our review to a painstaking analysis of the record to determine whether the evidence, when viewed in a

light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *Horst*, 880 N.W.2d at 40 (quotation omitted). "We will not overturn the verdict if the jury, acting with regard for the presumption of innocence and the State's burden of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty." *Jones*, 4 N.W.3d at 502.

For the jury to conclude that Oliver possessed the requisite specific intent for attempted first-degree assault, the state was required to prove that she intended the specific degree of harm applicable to that offense: great bodily harm. *See* Minn. Stat. § 609.221, subd. 1. "Great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8.

Viewing the evidence in the light most favorable to the conviction, Oliver's statements, "I'm going to f--king kill you," and, "I'm going to f--king stab you," were sufficient to permit the jury to conclude that Oliver intended to inflict an injury that would create a high probability of death or cause other serious bodily harm. Immediately before Oliver inflicted P.L.'s injury, she threatened his life and stated that she was going to use a knife to stab him. Similarly to the defendant in *Jones*, Oliver then used that knife in a manner consistent with her stated intent, slicing his neck and creating a cut that was approximately three inches long and one inch deep. P.L.'s child testified that he saw Oliver "cut [P.L.] in the jugular" and that Oliver "put force in it and cut his neck." In addition, P.L. asked, "Did you really just cut my neck wide open?" and Oliver answered, "I sure

D-9

did." Therefore, the direct evidence was sufficient to prove that she acted with intent to inflict great bodily harm.

In sum, I would conclude that attempted first-degree assault is a cognizable crime and that the evidence was sufficient to support Oliver's conviction for that crime. Accordingly, I would affirm her conviction.